AUGUSTUS ALBERT, Sheriff *vs.* JOSEPH LINDAU.

*Chattel Mortgage—Appropriation of payments—Action against Sheriff for alleged illegal seizure and sale of goods under Executions—Question whether an agreement between two parties constituted the relation of principal and agent for the sale of goods, or that of seller and buyer.*

Because a mortgagee of a chattel temporarily uses it with the assent of the mortgagor, and then returns it to him, the mortgage lien upon it is not thereby extinguished.

To make applicable the rule that in the absence of a specific appropriation of payments by either the debtor or creditor, the law will appropriate them, there must be some testimony tending to show that no such appropriation has been made by the parties.

Parties have right to contract as they please, if their contract be not condemned by the law as against good morals or in contravention of public policy.

J. L. and W. B. L. of the City of Baltimore, entered into the following agreement:

"Whereas, the said W. B. L. is desirous of carrying on and conducting the retail liquor business, at 51 East Lombard street, in said city, but is unable to do so, because of his inability to furnish stock and capital necessary in said business; and whereas, said W. B. L. is without means of his own, the said J. L. has consented to aid him upon the terms and conditions hereinafter named.

"Now this agreement witnesseth, that the said J. L. agrees to furnish and deliver to said W. B. L., as his agent, all such liquors, wines, &c., which he may require in said business, at the usual wholesale prices, so long as it shall be agreeable for him to do so, and said W. B. L. shall faithfully comply with this agreement. It is expressly understood and agreed, however, that said W. B. L. shall conduct and carry on said business only as the agent of said J. L., that the stock in trade furnished as aforesaid shall be and remain the absolute-property of the said J. L., and that all goods shall be sold for and on the account of said J. L., and all bills for goods sold

Albert, Sheriff *vs.* Lindau.

shall be made out in the name of said W. B. L., as agent aforesaid, and in no other manner; and said W. B. L. shall account to said J. L., at least once a month, for all goods delivered to him under this agreement, and shall pay over the wholesale price of such goods, and retain for his labor and attention in said business such profits as shall be made."

In an action brought against the Sheriff of Baltimore City, by J. L. for an alleged illegal seizure and sale of goods in the store of W. B. L. under executions against the latter, and which goods the plaintiff claimed as his under the above agreement. HELD:

1st. That although there were some features in this instrument of an unusual character, and tending to arouse suspicion as to its *bona fides*, the Court could not pronounce it void upon its face.

2nd. That there was no legal principle which would make void an agreement like this, if executed and carried out in good faith.

3rd. That upon the assumption that it was so executed, and was thus being carried out, and that the goods levied on by the sheriff at the instance of the judgment creditors, were duly furnished under it, and were in the store at the time of the levy, there was no reason why he should not be responsible for seizing and selling them, said creditors having recovered their judgments more than two years before the agreement was entered into.

4th. That the case would be quite different with respect to subsequent creditors, who might be fairly presumed to have been misled by the false credit which such possession and ownership might give.

5th. That under the above assumption the plaintiff was entitled to recover the value of the goods seized, provided the same *did not exceed the amount* owing to him by W. B. L. under the agreement, with interest in the discretion of the jury.

6th. But if the goods were in fact sold to W. B. L. *on credit*, instead of being entrusted to him for sale *as agent*, or if the agreement referred to was merely colorable, not made in good faith, and was intended to be used for the purpose of protecting property, which was actually sold to and belonged to W. B. L. from his creditors, under the guise of an agency, then the goods could be seized on execution both by his antecedent and subsequent creditors.

7th. That if J. L. delivered the goods in the store to W. B. L. at a *fixed price*, being the wholesale market price for such goods at the time of delivery, and charged the same to W. B. L. on his books, and authorized him to sell and dispose of them as if they were his own, and W. B. L. was to receive all the profits of such sales, and *was to sustain all losses* arising therefrom, or which might be incurred by injury to or destruction of the goods, and

was not to receive any commission or salary, and was *never required to account* for such sales, nor to render any account of the same from time to time, except that he was simply *to pay for the goods*, the prices charged on the books of J. L., (the same being the wholesale price of the same,) and in the bills for the goods sent to W. B. L. by J. L. at the time of delivering the same, and said bills so rendered were in the ordinary form of sale bills, made out to a purchaser of goods,—then there was in effect a waiver or an abandonment of the agency contract, and the protection it would otherwise have afforded to J. L's asserted ownership of the goods, and constituted in law a sale of them on credit accompanied by delivery.

8th. That where all the elements of such a sale exist it cannot be made anything else by calling it by a different name.

9th. That if the contract with W. B. L. was merely colorable, not made in good faith, but intended to conceal the property from the creditors of said W. B. L. in order to deprive them of his future earnings, the said delivery of said goods as far as the creditors of said W. B. L. were concerned vested the property in said goods, in said W. B. L., and the same could be taken on execution by his creditors.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

*Exception.*—At the trial the plaintiff offered the three following prayers.

1. The plaintiff prays the Court to instruct the jury, that if they believe from the evidence before them, that on May 26th, 1870, the plaintiff sold to a certain Wm. B. Lipper, one brown horse and one express wagon, No. 3361, but that the said Lipper did not at that time, nor at any time thereafter, pay to the plaintiff the consideration therefor, and that in order to secure himself for the same he did, on said date, receive from said Lipper the bill of sale offered in evidence, and that the defendant levied upon and sold the same as related in the evidence, that then the plaintiff is entitled to recover the value thereof, provided the sums so recovered shall not exceed the amount still owing thereon from said Lipper to Lindau, (with interest in the discretion of the jury,) unless the jury shall find

Albert, Sheriff *vs.* Lindau.

that after the making of said bill of sale, the property in the brown mare referred to therein, was re-transferred to Lindau, in which event the lien created by the bill of sale was lost ; but if they shall find that the substitution of the sorrel mare for the brown mare was only an exchange of use, then such exchange does not impair the plaintiff's right to recover.

2. The plaintiff prays the Court to instruct the jury, that all the evidence in reference to invalidity of the bill of sale must be excluded from their consideration, and that the same is valid as a mortgage for the amount due thereunder.

3. The plaintiff prays the Court to instruct the jury, that if they believe from the evidence before them, the execution of the written agreement offered in evidence, and that Wm. B. Lipper was carrying on business thereunder with the goods of Lindau, at the time the levy in this case was made, and that the defendant had notice of this fact, and that notwithstanding the same, he seized and sold the goods so belonging to said Lindau, then the plaintiff is entitled to recover the value of these goods, provided the same does not exceed the amount owing to him by Lipper under said agreements, with interest in the discretion of the jury.

And the defendant offered the following ten prayers :

1. If the jury find from the evidence that the plaintiff, Lindau, sold and delivered the goods in the store to William B. Lipper, on condition that the goods were to remain the property of Lindau, until they were paid for, but at the same time it was part of the terms of sale and delivery that said Lipper might sell and dispose of said goods as if they were his own, and by the terms of said sale, Lipper was authorized to place said goods in his store for sale to the public, then said conditional sale and delivery vested the property in said goods in Lipper, as far as his creditors were concerned, and the same were liable to be taken on

execution for his debts, and the jury must find for the defendant.

2. If the jury find from the evidence that the plaintiff, Lindau, furnished and delivered the goods in the store to William B. Lipper, on condition that the same were to become the property of Lipper when paid for, and authorized or permitted said Lipper to put said goods in his store for sale to the public at large, and to take all the profits derived from the sale of them, and he sustain all losses, but that said arrangement for furnishing of said goods to said Lipper was merely colorable, not made in good faith, but intended to conceal the property from the creditors of said Lipper, to deprive said creditors of the future earnings of said Lipper, and that the plaintiff, Lindau, permitted said Lipper to hold himself out as the owner of the same, with the right of disposition, then said delivery of said goods, as far as the creditors of said Lipper are concerned, vested the property in said goods in said Lipper, and the same could be taken on execution by his creditors, and the verdict must be for the defendant.

3. If the jury find from the evidence that the plaintiff, Lindau, delivered the goods in the store of Lipper, at a fixed price, which was the wholesale market price for such goods at the time of delivery, and charged the same to Lipper on his books, and authorized said Lipper to sell and dispose of said goods as if they were his own, and said Lipper was to receive all the profits of said sales, and was to sustain all losses arising therefrom, or which might be incurred by the injury to or destruction of said goods, and was not to receive any commissions or salary, and was never required to account for said sales, nor to render any account of the same from time to time, except that he was simply to pay for said goods, the price charged on the books of the plaintiff, the same being the wholesale price of the same, and in the bills for said goods sent to said Lipper by the plaintiff, at the time of delivering the same,

and that said bills so rendered, were in the ordinary form of bills of sale made out to the purchaser of goods, then such dealings and transactions between Lindau and Lipper in law, constitute not the relation of principal and agent, but that of seller and buyer, as far as creditors of said Lipper are concerned, and said arrangement as to such creditors, is a sale of the said goods to said Lipper, and as far as the creditors of said Lipper are concerned, vests the property in said goods in Lipper, and the property thus delivered is liable to be taken on execution, for the debts of said Lipper, and the jury must find for defendant.

4. Even if the jury should find that the goods in the store were furnished and delivered by the plaintiff, Lindau, to Lipper, in good faith, and without intent to defraud, and that the said goods were not to become the property of said Lipper until paid for, the burden of proof is on the plaintiff to show that the particular goods taken by the officer, were never paid for by Lipper, and that this is not shown by simple proof of a balance on account due from Lipper to Lindau.

5. Even if the jury find that the plaintiff, Lindau, furnished and delivered the goods in the store to Lipper in good faith, without intent to defraud, on condition that said goods were not to become the property of said Lipper until paid for, it is still incumbent on the plaintiff to show what portion of the particular goods taken by the defendant on execution were not paid for, and if the jury find that the goods not paid for, and claimed as the property of the plaintiff, were commingled with the goods of Lipper in the store which had been paid for, so as not to permit of separation and identification, and said goods not paid for were permitted by the plaintiff, Lindau, to remain in the store of said Lipper, under his control, with the right upon the part of said Lipper, to sell and dispose of the same as his own, and there was no attempt at the time of taking the goods on execution to point out to the officer

the particular goods not paid for, and claimed therefore by the plaintiff, and said officer had no knowledge of the same, then the plaintiff is not entitled to recover.

6. If the jury find from the evidence, that the horse mentioned in the bill of sale offered in evidence, was the property of said Lipper, and by him subsequently exchanged for a sorrel horse with the plaintiff, and that the plaintiff two or three years after such exchange, re-delivered said horse mentioned in the bill of sale to said Lipper as his own, relying on said bill of sale as a security for the*same by way of mortgage, then said bill of sale does not cover said horse, and the plaintiff is not entitled to recover therefor.

7. That if the jury find that the purpose of the agreement offered in evidence between Lindau and Lipper, by which said Lindau was to furnish said Lipper with goods at fixed prices, to be sold by said Lipper, and for his sole benefit, he to retain all the profits arising from said sale, and also with the horse and wagon with which to carry on his business as a merchant in effecting said sales, and which were accompanied with delivery in each case, but the title to all these to remain in said Lindau until paid for, was to deprive the creditors of said Lipper of their legal remedies against said goods, and horse and wagon, for the payment of their debts, or of the future earnings of said Lipper, then such agreement was void and fraudulent as to creditors, and all acts done, or transactions had in pursuance of said purpose, are to be regarded as but one act, no matter in what order they occurred, and the plaintiff is not therefore entitled to recover for any of the said goods or horse and wagon delivered to said Lipper in pursuance of said purpose.

9. That if the jury find from the evidence that at the wholesale prices of the goods on hand and levied upon and sold in this cause, their value exceeded the amount of indebtedness from said Lipper to said Lindau at that time,

the goods represented by said excess were the property of said Lipper, and liable to execution by his creditors; and if they find said goods were so intermingled with the residue of said goods as to be incapable of separation, or were not separated and pointed out to the sheriff, then the whole of said goods were liable to execution, and the plaintiff is not therefore entitled to recover for any part thereof.

10. That if the jury find from the evidence that subsequent to the making of the agreement of August, 1873, offered in evidence, the plaintiff furnished said Lipper with goods under the circumstances given in evidence, and at fixed or wholesale prices, and charged him on running account therefor, and credited him with payments made from time to time, and there was no special appropriation of said payments by said Lipper or Lindau, the laws appropriates said payments to the oldest accounts, and by such operation of law, therefore, all the goods previously purchased to those whose valuation at wholesale prices equaled the amount of indebtedness due by said Lipper to said Lindau at the time of said levy, or were in excess of said amount of indebtedness, were the property of said Lipper, and if they shall find that said goods of Lipper were so intermingled with the other levied upon as to be incapable of separation, or were not properly designated or pointed out to the sheriff at the time of making said levy, the plaintiff is not entitled to recover for any of such goods.

11. That if the jury find from the evidence that the horse and wagon levied upon and sold in this cause, were the same as that described in the mortgage bill of sale offered in evidence, and that subsequent to the execution of said mortgage, and the execution of the mortgage bill of sale covering said stock of goods, also offered in evidence, the plaintiff furnished and delivered to said Lipper, goods under the circumstances testified to in this cause, and charged him on running account therefor, and said

Lipper made payments from time to time as he was able, and which said payments were not specifically appropriated by said Lipper or Lindau, the law appropriates said payment, first, to the payment of the amounts due on account of said mortgages; and if they shall find that the total amount of said payments at any time equaled or exceeded the amount of the considerations of said mortgages; then both of said mortgages were satisfied and discharged, and the plaintiff is not entitled to recover for said horse and wagon.

The Court (DOBBIN, J.,) granted the said three prayers of the plaintiff, and refused all of the prayers of the defendant. The defendant excepted.

The jury rendered a verdict for the plaintiff, and judgment was entered accordingly. The defendant appealed.

The cause was argued before BARTOL, C. J., BRENT, GRASON, MILLER and ROBINSON, J.

*John K. Cowen* and *Wm. Daniel,* for the appellant.

*Isador Rayner,* for the appellee.

MILLER, J. delivered the opinion of the Court.

The appellee, Lindau, sued the appellant, the Sheriff of Baltimore City, in *trover,* for seizing, carrying away and converting to his own use a lot of wines and liquors, and a horse and wagon alleged to be the property of the plaintiff. It appears from the record, the sheriff seized these goods and chattels under executions on certain judgments, against William B. Lipper, recovered in March, 1871. The levy was made on or about the 5th of October, 1874, and the property was sold by the sheriff after due advertisement on the 22nd of that month. The plaintiff claimed the horse and wagon under a bill of sale thereof to him from Lipper dated the 26th of May, 1870, and duly recorded

two days thereafter. Just prior to the levy of these executions this bill of sale had been decreed to be a mortgage, to secure the consideration of $300 therein expressed by the Circuit Court of Baltimore City, upon a bill filed by these judgment creditors against Lindau, Lipper and others for the purpose of having the same, with other conveyances made by Lipper, set aside as fraudulent and void as against his creditors. The other goods the plaintiff claimed under a private contract or agreement between Lipper and himself dated the 27th of August, 1873, which we shall notice more particularly hereafter.

1st. As to that part of the .case which relates to the horse and wagon, we find no substantial error in the rulings which the Superior Court gave on that subject. The evidence shows that after the bill of sale was executed, Lindau allowed Lipper, at the latter's request, to change horses and have another instead of the one mentioned in the bill of sale, because the latter shied and would not go near a locomotive, and that Lindau received, and for a time, used this horse, but this exchange was afterwards revoked, and Lipper again received from Lindau the horse mentioned in the bill of sale, and had him in possession at the time he was seized by the sheriff. In granting the plaintiff's first prayer the Court instructed the jury, that if they found that the horse mentioned in the bill of sale was *re-transferred* to Lindau, then the lien thereon credited by the bill of sale *was lost*, but if they found this substitution of horses was only an *exchange of use,* then such exchange does not impair the plaintiff's right to recover. If the jury under this instruction found, as by their verdict, it appears they did, that this transaction was a mere temporary exchange of the use of these two horses, it is clear the appellant has no cause of complaint, for there is no principle of law which declares that if a mortgagee of a chattel, temporarily uses it with the assent of the mortgagor and then returns it to him, the mortgage

lien upon it is thereby extinguished. Nor was the appellant injured by the granting of the plaintiff's second prayer, by which the jury were instructed they must exclude from their consideration, all evidence in reference to the invalidity of the bill of sale, and that the same is valid as a mortgage for the amount due thereunder. Outside of the proceedings and decree in the equity cause, there is nothing to show that this instrument was other than an absolute conveyance as it purports to be on its face. By treating it as a mortgage the appellant derived the benefit of a credit thereon, which he would not otherwise have been entitled to claim. Again conceding the position taken in the appellant's eleventh prayer, that if the payments made by Lipper to Lindau were not specifically appropriated by either of them, the law will appropriate them first to the amount due on the mortgage to be correct. Still there must be some testimony tending to show, that no such appropriation had been made by the parties themselves. But the evidence is all the other way, and shows that the $75 was paid *on account* of the horse and wagon, and that the other payments were made *on account* of the goods. For these reasons we find no error in the Court's action upon the plaintiff's first and second, and the defendant's sixth and eleventh prayers.

2nd. The contract under which the plaintiff claims the other goods sold by the sheriff, is in writing, signed by both parties thereto, and is as follows:

"This agreement made this 27th day of August, 1873, by and between Joseph Lindau and William B. Lipper, both of the City of Baltimore and State of Maryland: *Whereas*, the said William B. Lipper is desirous of carrying on and conducting the retail liquor business at 51 East Lombard street in said city, but is unable to do so because of his inability to furnish stock and capital necessary in said business: and *whereas*, said Lipper is without means of his own, and the said Lindau has consented

Albert, Sheriff *vs.* Lindau.

to aid him upon the terms and conditions hereinafter named. Now this agreement witnesseth that the said Joseph Lindau agrees to furnish and deliver to said Lipper, as his agent, all such liquors, wines, &c., which he may require in the said business at the usual wholesale prices so long as it shall be agreeable for him to do so, and said Lipper shall faithfully comply with this agreement. It is expressly understood and agreed however, that said Lipper shall conduct and carry on said business *only as the agent* of said Lindau, and the stock in trade furnished as aforesaid shall be and remain the absolute property of the said Lindau, and that all goods shall be sold *for and on account of said Lindau,* and all bills for goods sold shall be made out in the name of said Lipper, *as agent aforesaid* and in no other manner ; and said Lipper shall account to said Lindau at least once a month, for all goods delivered to him under this agreement, and shall pay over the wholesale price of such goods, and retain for his labor and attention in said business such profits as shall be made.''

There are some features in this instrument of an unusual character, and tending to arouse suspicion as to its *bona fides,* but we cannot pronounce it void on its face. It is in substance an agreement by which Lindau, who appears to have been a wholesale liquor dealer, was to furnish a stock of goods to Lipper, in order to enable the latter to carry on a retail liquor business, as *agent* for the former, with power to sell the goods *for and on account* of his principal. The agent was required to render monthly accounts of the goods delivered to him under the agreement, and sold by him, and to pay over to his principal the wholesale price thereof, and instead of being paid for his services in the usual way, by a salary or commissions on sales, the agent was authorized to retain for his labor and attention in the business, what profits he could make by selling at retail. Parties have the right to contract as they please, if their

contracts be not condemned by the law as against good morals, or in contravention of public policy, and we know of no legal principle, which would make void an agreement like this, if executed and carried out in good faith. Upon the assumption that it was so executed, and was thus being carried out, and that the goods levied on by the sheriff, at the instance of these judgment creditors, were duly furnished under it, and were in the store unsold at the time of the levy, we see no reason why he should not be made responsible for seizing and selling them. It must be remembered that these creditors had recovered their judgments more than two years before this agreement was entered into, and, therefore, could not possibly have trusted Lipper, by reason of his possession and apparent ownership of these goods. The case would be quite different, with respect to subsequent creditors, who might be fairly presumed to have been misled by the false credit which such possession and ownership might give. We are, therefore, of opinion there was no error in the granting of the plaintiff's third prayer. The law of that instruction is, that if the jury find the execution of this agreement, and that Lipper was carrying on business *thereunder* with the *goods of Lindau*, at the time this levy was made, and the sheriff had notice of this fact, and notwithstanding the same, seized and sold the goods so belonging to Lindau, then the plaintiff is entitled to recover *the value* of these goods, provided the same *does not exceed the amount* owing to him by Lipper under the agreement, with interest in the discretion of the jury. In this aspect of the case, and in view of the granting of this instruction, the Court was right in rejecting the defendant's fourth, fifth, ninth and tenth prayers. The question argued at bar, as to an intermixture of the *goods obtained from Lindau*, with those belonging to Lipper, and which he had obtained *from other sources*, is not presented by any of the defendant's prayers, and even if it were, we find in the record no evidence that

such goods had been so intermingled, as to be incapable of separation and identification.

But in our opinion, there is another view to be taken of this branch of the case. If these goods were in .fact *sold* to Lipper *on credit*, instead of being entrusted to him for sale *as agent*, or if the agreement referred to was merely colorable, not made in good faith, and was intended to be used for the purpose of protecting property which was actually sold to and belonged to Lipper from his creditors, under the guise of an agency, then we think it is quite clear the goods could be seized on execution, both by his antecedent and subsequent creditors. Thus, if the facts were, as stated in the defendant's third prayer, that Lindau delivered the goods in the store to Lipper. at a *fixed price*, being the wholesale market price for such goods at the time of dealing, and charged the same to Lipper on his books, and authorized Lipper to sell and dispose of them as if they were his own, and that Lipper was to receive all the profits of such sales, and *was to sustain all losses* arising therefrom, or which might be incurred by injury to or destruction of the goods, and was not to receive any commissions or salary, and was *never required to account* for such sales, nor to render any account of the same from time to time, except that he was simply *to pay for the goods*, the price charged on the books of Lindau, (the same being the wholesale price of the same,) and in the bills for the goods sent to Lipper by Lindau, at the time of delivering the same, and that said bills so rendered, were in the ordinary form of sale bills, made out to a purchaser of goods, then in our judgment, there was in effect a waiver or abandonment of the agency contract, and the protection it would otherwise have afforded to Lindau's asserted ownership of the goods, and constituted· in law a sale of them on credit, accompanied by delivery. Where all the elements of such a sale exist, it cannot be made anything else by calling it by a different name. We

are, hence of opinion, that upon the finding of these facts by the jury, the plaintiff could have no cause to complain of the conclusion of law stated in this third prayer, viz., that such dealings and transactions between these parties in law, constitute, not the relation of principal and agent, but that of seller and buyer, so far as creditors of Lipper are concerned, and this arrangement, (which we understand to mean the course of dealing, and the facts above stated, and not the written contract of agency,) as to such creditors is a *sale* of the goods to Lipper, and vests the property in them in him, and renders them liable to be taken on execution for his debts.   So, again, if the jury found the other facts stated in the defendant's second prayer, and that the contract with Lipper was merely colorable, not made in good faith, but intended to conceal the property from his creditors, in order to deprive them of his future earnings; we think the plaintiff cannot complain of the legal conclusions stated in that prayer.   There is evidence in the record, (as to the weight of which we of course express no opinion,) legally sufficient to submit to the jury, the finding of the facts stated in these two instructions, and in our judgment, it was error to reject them.   We are also of opinion, from all that the record discloses, that the defence as to these goods, if it can be made out at all, must rest upon the facts and legal propositions contained in these two prayers, and that there was no error in rejecting any of the others offered on the part of the defendant.   An additional, and also fatal objection to the defendant's seventh prayer is, that it connects the horse and wagon with the goods, whereas the plaintiff's title to the former rests upon the recorded bill of sale, and we have shown that that title is open to none of the objections that have been urged against the title to the goods.

The exception to the ruling on the admissibility of evidence contained in the first exception, is not noticed in the

brief of the appellant's counsel, nor was it referred to in their oral argument at bar. We shall therefore treat it as having been properly abandoned.

*Judgment reversed, and*
*new trial awarded.*

(Decided 7th March, 1877.)