### In re SMITH.

(District Court, D. Maryland.   November 15, 1911.)

BANKRUPTCY (§ 140*)—PROPERTY PASSING TO TRUSTEE—MERCHANDISE HELD ON CONSIGNMENT.

A written contract under which a fertilizer company shipped fertilizers to a bankrupt for sale shortly before his bankruptcy *held* on its face to be one of consignment to him as agent, and to entitle the company to re-

claim the fertilizer remaining on hand and the amounts collected by the trustee for that sold, in the absence of any course of business between the parties tending to show that the contract was in fact one of sale.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 140.*]

In the matter of James H. Smith, bankrupt. On petition of Baltimore Pulverizing Company to reclaim property. Petition granted.

Harry L. Price, for receiver and trustee.

George Dobbin Penniman, for Baltimore Pulverizing Co.

ROSE, District Judge. James H. Smith was a merchant of Cecil county. He there kept a general store. He will be spoken of as the bankrupt. The Baltimore Pulverizing Company is a corporation, and will be referred to as the Company. The Company has its offices in Baltimore.

Before March 1, 1911, the bankrupt and the Company never had any business relations. The bankrupt knew that the Company was a manufacturer of fertilizers; that its fertilizers were sold in Cecil county, and were there popular. It does not appear that the company had ever heard of the bankrupt. On March 1, 1911, being in Baltimore, he went to their offices. He had an interview with their secretary. He on the same day entered into a written contract with it. This contract was on a printed form. It purported to appoint the bankrupt agent of the company "for the consignment of their fertilizer, to be shipped in bags to be delivered at any time from now until July 1, 1911, f. o. b. Baltimore, as follows." Then followed in print, under the heading "Spring Line," some 17 kinds, grades, or brands of fertilizer, opposite each of which there was written a price for a cash settlement and a somewhat larger price for settlement by note. On the contract there was also, under heading "Fall Line," printed 11 kinds, grades, or brands of fertilizer, but no price was put on any of these. Under the heading of "Conditions of Sale and Terms of Settlement," the contract provided that the—

"said agent is hereby authorized to sell the above fertilizers in the ordinary course of his business for not less than the prices above set forth and freight from Baltimore to point of delivery, except upon the written authority of the said Baltimore Pulverizing Company to vary the same, the said fertilizers and all proceeds of any sale of the same, made by said agent, are to be the property of the said Baltimore Pulverizing Company, and to be held by the said agent in trust for the said Baltimore Pulverizing Company until the said proceeds of sale shall have been paid over to the said Company, and until any and all notes given for the sale of said fertilizer, either by the said agent or said purchaser, shall have been paid and satisfied."

"Spring Settlement—Prices in first column, net cash July 1st. Prices in second column, settlement by note dated July 1st, with interest, and due not later than Dec. 1, 1911."

It was provided that the contract—

"is subject to suspension by fire or unavoidable accidents at seller's works or storage warehouses or for financial reasons in the judgment of the company."

Between the making of the contract and the 27th day of May, 1911, some 90 tons of fertilizers were at different times at the re-

quest of the bankrupt shipped by the Company to him. At the time each shipment was made the Company sent him a bill or statement in the ordinary form, except that it was headed:

"Mr. James H. Smith, Agent of Baltimore Pulverizing Company, in Account with Said Company."

Prior to said date in May he had sold some of this fertilizer for cash and had received payment therefor. Some of it he had sold and had not yet been paid for. Some of it was still in his hands unsold. On May 27, 1911, an involuntary petition in bankruptcy was filed against him. One month later he was adjudicated a bankrupt. The Company by its petitions asked that the fertilizer remaining in the bankrupt's hands unsold should be returned to it, that all moneys received by him for the fertilizers and which came into the possession of his receiver and trustee, and all sums collected by his receiver or trustee for its fertilizer sold by him before the filing of the petition against him, but payment for which was subsequently made to the receiver or trustee, should be paid over to it.

The bankrupt turned over no money to his receiver or trustee. It is therefore unnecessary to inquire whether the Company would have been entitled to be paid out of any moneys coming into the hands of the receiver or trustee from the bankrupt the amounts received by the bankrupt from the sale of its fertilizer. By agreement the fertilizer on hand at the time of the filing of the petition has since been sold by the receiver. The trustee holds the proceeds.

The trustee says that the Company has no claim upon him. He asserts that at the time of the filing of the petition in bankruptcy the fertilizer in the hands of the bankrupt and the sums due by those persons who had purchased portions of the fertilizer, but had not yet paid for it, could have been taken by an execution creditor of the bankrupt. If that is so, under the amendatory act of 1910 (Act June 25, 1910, c. 412, 36 Stat. 838), the trustee is entitled to them. He relies on Albert, Sheriff, v. Lindau, 46 Md. 334. In that case the Court of Appeals of Maryland held that if goods were in fact sold to a dealer on credit, instead of being entrusted to him for sale as agent, or if the agreement was merely colorable, not made in good faith, and was intended to be used for the purpose of protecting property, which was actually sold and belonged to the dealer, from his creditors under the guise of an agency, the goods could be seized on execution both by his antecedent and subsequent creditors. The contract in that case contained on its face much evidence that the transaction, though called a consignment, was in fact a sale. The court held that under all the circumstances the jury must say whether the goods had in fact been sold or merely consigned.

In the case at bar the contract has been proved. Shipments under it had been shown. Nothing else has been established. No course of dealing had grown up between the parties more consistent with their considering themselves seller and buyer than principal and agent. Bankruptcy followed hard after the making of the contract. When the petition was filed, no remittance had ever been made by the bankrupt. None had become due. In this state of the proof the Com-

pany is entitled to the proceeds of its fertilizer in the hands of the trustee, unless as a matter of law such contract as it made with the bankrupt must always, as against an execution creditor of the so-called agent, be held to be a sale. Such contracts may be readily abused. It may seem best to a Legislature to say that they shall be construed to pass to the agent title in the goods. In the absence of such a statute, no such interpretation must necessarily be put upon them. The Maryland Code is silent about them. Nevertheless the parties to them may so act as to show that what they called a consignment was in fact a sale. When they do their rights will depend upon what they did, and not upon the name they gave to that which they were doing.

In this case nothing of that kind has been done. The Company is entitled to such sums as the receiver or trustee may have collected from the purchasers of the fertilizer and to the proceeds of the sale of the fertilizer sold by the receiver, less an equitable allowance for the expense incurred by the bankrupt in collecting such sums and in selling such fertilizer.