## CHARLES A. LOCKERMAN, Garnishee, vs. THE EASTERN SHORE TRUST COMPANY.

*Appeal—Delay in Transmitting Record—Removed Case— Showing as to Jurisdiction—Garnishment— Prayers—Indebtedness to Defendant.*

When the failure to transmit the record on appeal within the time prescribed appears to have been caused by the appellee as well as the appellant, the appeal will not be dismissed on account of the delay.                                    p. 343

It appearing that the delay in transmitting the record arose in part from the fact that appellee's counsel consumed a week

in preparing suggested changes in the bills of exception, *held*
that the appeal should not be dismissed.          p. 343

A delay of two weeks by the court in signing the bill of excep-
tions should not be charged to the appellant, his counsel not
having any reason to anticipate such delay, and consequently
being under no duty to take steps at once to require the court
to act.          p. 343

It being agreed by counsel that a copy of the docket entries
were, as required by Code, art. 17, sec. 7, sent with a writ of
attachment on judgment directed to the sheriff of another
county, who laid it in the hands of appellant as garnishee, the
fact that the record sent to the court of a third county, to
which the garnishment case was removed, failed to show that
the copy was so sent, did not deprive the latter court of juris-
diction.          p. 345

It is the fact that the court from which a case was removed
had jurisdiction, and not knowledge of that fact by the court
to which the case was removed, that determines the jurisdic-
tion of the latter court, on appeal to the Court of Appeals,
and an agreement as to the existence of such fact has the same
effect as if the fact appeared in the record.          p. 345

The garnishee, in whose hands a writ of attachment on judg-
ment was laid, not having moved, in the court to which the
garnishment case was removed, to quash the writ by reason
of the failure of the record, sent to such court from the court
from which the case was removed, to show the latter court's
jurisdiction, and the parties having gone to trial on the record
as sent, they cannot question its completeness, on appeal from
a judgment against the garnishee.          p. 345

Testimony of a witness that certain samples of canned goods
were not approved was not inadmissible because he stated that
he knew it only through his brokers, it being impracticable
for him to get such information in any other way, and he hav-
ing previously testified that the goods were sold subject to ap-
proval and the samples were to be sent to a broker.          p. 347

If the character of evidence as hearsay is apparent at the
time of its admission, exception should be taken at that time,
and if this is not done, a refusal of a motion to strike it out is
proper.          p. 347

If a question asked a witness was not answered, the overruling of an objection thereto is not prejudicial.          p. 347

Defendant cannot object to testimony as hearsay if it was brought out by him on cross-examination and directly asked for.
p. 347

An exception which embraces rulings on motions to strike out testimony and on prayers and special exceptions will not be considered as to the motions, but will be considered only as to the rulings on the prayers and special exceptions.          p. 347

Plaintiff, in an attachment on judgment, has the burden of proving the indebtedness of the garnishee to the judgment debtor, and if this is negatived by proof that a transaction was a sale, he has the burden of proving that it was not a sale.          p. 348

In an attachment on judgment an instruction was erroneous which excluded the garnishee's right to offset, against the amount due by the garnishee, the amount due him for purchase money, in case the jury found a certain transaction to be a sale, and that a balance thereon was due.          p. 348

The overruling of special exceptions to a prayer *held* not to involve reversible error, one assignment of error being too general, and the other being subject to the general exception.   p. 348

The vendee cannot, as plaintiff, assert a liability on the vendor's part for loss by reason of the latter's failure to sell the goods at the market price on learning of the vendee's repudiation of the contract, such liability being available to the vendee only in a suit against him by the vendor.          p. 348

A prayer which sought to have the jury instructed in effect that there could be no recovery by plaintiff against the garnishee as to any part of a certain check given to him by the judgment debtor, if the jury found that the transaction in connection with which the check was given was a sale by the garnishee to the judgment debtor, *held* improperly refused.

p. 349

In a garnishment proceeding on a judgment, a prayer submitted by the garnishee *held* defective as taking no account of an amount received by him for goods sold under an agreement between him and the judgment debtor.          p. 349

A prayer submitted by the garnishee, to the effect that he had a right to hold possession of goods sold by him to the judgment debtor, *held* erroneous as being inconsistent with all the testimony, that the goods were to be delivered on the receipt of shipping instructions.                                             p. 349

A prayer is defective which refers to the pleadings without specifically pointing out in what respect there is a variance.

                                                              p. 349

*Decided July 1st, 1924.*

Appeal from the Circuit Court for Wicomico County (BAILEY and DUER, JJ.).

Attachment on judgment by the Eastern Shore Trust Company against the Eastern Shore Brokerage and Commission Company, laid in the hands of Charles A. Lockerman as garnishee. From a judgment in favor of plaintiff, the garnishee appeals. Reversed.

The following prayers appear in the record:

*Plaintiff's Second Prayer.*—If the jury shall find that at the time the attachment was sued out in this case that The Eastern Shore Brokerage & Commission Company owed unto the plaintiff the judgment dated June 10th, 1922, offered in evidence; that the whole of said debt is still unpaid; that at the time the said attachment was laid in the hands of Charles A. Lockerman he was indebted unto The Eastern Shore Brokerage & Commission Company, then their verdict must be for the plaintiff for the sum of such indebtedenss not greater however than the amount of said judgment, together with interest and costs thereof, and not greater than the amount of the indebtedness of the said Lockerman unto the said The Eastern Shore Brokerage & Commission Company.

*Plaintiff's Third Prayer.*—The jury are instructed that the burden of proof rests upon Charles A. Lockerman to establish by a preponderance of evidence that the 1,500 cases of pears mentioned in the evidence were sold by the said Lockerman to the Eastern Shore Brokerage & Commission

Company, and if the testimony in this case shall be such as to leave the minds of the jury in a state of "even balance" or "equipoise" on that point, then their verdict should be for the plaintiff for whatever sum they shall find from the evidence to be owning from the said Lockerman to said Eastern Shore Brokerage & Commission Company, provided that their verdict must not exceed the principal amount, interest and costs which they shall find from the evidence to be due on the judgment of the plaintiff against the Eastern Shore Brokerage & Commission Company referred to in the evidence.

*Plaintiff's Fifth Prayer.*—The jury are instructed that in addition to any indebtedness which they may find to exist from said Lockerman to said Eastern Shore Brokerage & Commission Company, if they shall so find growing out of the payment of the sum of $5,000.00 from said Eastern Shore Brokerage & Commission Company to said Lockerman, if they shall find such payment was a loan, or growing out of the transaction concerning the 1,500 cases of pears, if they shall find such transaction was a sale to said Eastern Shore Brokerage & Commission Company by said Lockerman, if they shall further find that said Eastern Shore Brokerage & Commission Company were canned goods brokers, and that as such brokers they made various sales of canned goods for said Lockerman, and that as compensation for such brokerage services the said Lockerman agreed to pay to said Eastern Shore Brokerage & Commission Company commission on the gross amount of such sales at the rate of three per cent., and that all of such commissions have not been paid by said Lockerman to said Eastern Shore Brokerage & Commission Company, then the jury shall include in their verdict such amount as they may determine from the evidence to represent any unpaid balance on said brokerage, together with such interest thereon as they shall see fit to allow, provided that their verdict must not exceed the principal amount, interest and costs which they shall find from the evidence to be due on the judgment of the plaintiff against the Eastern Shore

Brokerage & Commission Company referred to in the evidence.

*Plaintiff's Eighth Prayer.*—The jury are instructed that even if they shall find from the evidence that the 1,500 cases of pears mentioned in evidence, were sold by said Lockerman to said Eastern Shore Brokerage & Commission Company, f. o. b. Lockerman's factory, and said purchaser paid the sum of five thousand dollars ($5,000.00) thereon, and that the said Eastern Shore Brokerage & Commission Company failed and refused to accept and pay for said pears, and so notified said Lockerman, yet the duty devolved upon said Lockerman to re-sell the said pears at such time, as the jury shall find from the evidence that the said Eastern Shore Brokerage & Commission Company made known to said Lockerman that it did not intend to accept and pay for said pears, and if the jury shall find that the said Lockerman did not then re-sell said pears, and that said pears thereafter either deteriorated in quality, or decreased in market price f. o. b. Lockerman's factory, and that said Lockerman at the time of the re-sale of the pears mentioned in the evidence did not realize as much therefrom as he could have realized had said 1,500 cases of pears been sold when the first knew of the intention of said Eastern Shore Brokerage & Commission Company not to accept and pay for the same, if they find such notice to him, then their verdict should be for the plaintiff for the amount they may believe would have been realized by the said Lockerman if he had sold the said 1,500 cases when he learned of the intention of the said Eastern Shore Brokerage & Commission Company not to accept the same, added to any amount they may find the said Lockerman owed the said Brokerage company on commissions, after deducting therefrom such sum as they may find to have been due said Lockerman from said Eastern Shore Brokerage & Commission Company for the balance on the purchase price of said pears, together with such interest thereon as they shall see fit to allow provided, that their verdict must not exceed the principal amount, interest and costs which they shall find from the evidence to be due on the judgment of the

plaintiff against the Eastern Shore Brokerage & Commission Company referred to in the evidence.

*Plaintiff's Ninth Prayer.*—The jury are instructed that if they believe from the evidence that The Eastern Shore Brokerage & Commission Company purchased from Charles A. Lockerman the 1,500 cases, or 3,000 dozen of No. 3 canned pears, on the terms and conditions as stated in the evidence, at $3,00 per dozen f. o. b. his factory, and paid unto him in part payment therefor, the sum of $5,000.00, at or about the time of said purchase; that it was a term of said agreement of sale that delivery of said pears should be made immediately; that the said The Eastern Shore Brokerage & Commission Company refused and failed to accept the same; that the said Lockerman made no effort to sell said pears until about twenty-one months after the said sale; that the said pears had deteriorated in quality or gotten in very bad shape at said time; that the said Lockerman kept said pears in his warehouse at Crisfield until he sold part of them in or about the month of September, 1921; that he has since allowed the balance to become valueless because of rust or age; that the value of such pears as above mentioned had gradually declined in value f. o. b. said factory from $3.00 per dozen in October, 1919, to the time when part of them were sold as aforesaid, then the jury are instructed that it was the duty of said Lockerman to have sold said *prayers* on the market for the purpose of reducing or preventing loss when he learned that the Eastern Shore Brokerage & Commission Company would not take the same, and any damage or loss resulting from a decline in the market or in the condition of said pears after the said Lockerman learned that the said Eastern Shore Brokerage & Commission Company would not accept them, is the loss of the said Lockerman.

*Defendant's First Prayer.*—The defendant prays the court to instruct the jury that if they shall believe from the evidence that on or about October 10th, 1919, the defendant sold unto the Eastern Shore Brokerage & Commission Com-

pany 1,500 cases of No. 3 canned pears at $6.00 per case, and shall further believe from the evidence that the Eastern Shore Brokerage & Commission Company mailed to the defendant the check for $5,000.00 offered in evidence by the plaintiff in part payment of the purchase price for said pears, then the plaintiff is not entitled to recover in this action for any part of the said $5,000.00.

*Defendant's Second Prayer.*—The defendant prays the court to instruct the jury that if they shall believe from the evidence that on or about October 10th, 1919, the defendant sold unto the Eastern Shore Brokerage & Commission Company fifteen hundred cases of No. 3 canned pears at $6.00 per case, and that the Eastern Shore Brokerage & Commission Company promised to give the defendant shipping instructions for same, and shall further believe from the evidence that the Eastern Shore Brokerage & Commission Company mailed to the defendant the check for five thousand dollars offered in evidence by the plaintiff in part payment of the purchase price for said pears, and that the Eastern Shore Brokerage & Commission Company failed to give to the defendant shipping instructions for said pears, then the plaintiff is not entitled to recover in this action for any part of the said five thousand dollars paid on the purchase price of said pears, if the jury shall find that the said sum was paid as a part of the purchase price of same.

*Defendant's Third Prayer.*—The defendant prays the court to instruct the jury that if they shall believe from the evidence that on or about October 10th, 1919, the defendant sold to the Eastern Shore Brokerage & Commission Company fifteen hundred cases of No. 3 canned pears, $6.00 per case, and that afterwards the said Eastern Shore Brokerage & Commission Company sold for the defendant certain canned goods of the defendant for which the defendant was to pay the said company a commission of three per cent. on the amount of the said sales, and shall further believe from the evidence that the said Eastern Shore Brokerage & Commission Company has failed to pay all of the purchase money for the said fifteen hundred cases of canned

pears, and that the claim of the Eastern Shore Brokerage
& Commission Company for the commission on the sale of
said canned goods for the defendant is not equal to the sum
or balance which the said Eastern Shore Brokerage & Com-
mission Company has failed to pay the said defendant for
the said pears, if the jury shall find that the Eastern Shore
Brokerage & Commission Company has failed to pay the
same, then the plaintiff is not entitled to recover in this
action for the said commissions.

*Defendant's Fourth Prayer.*—The defendant prays the
court to instruct the jury that if they shall believe from the
evidence that the Eastern Shore Brokerage & Commission
Company bought from the defendant fifteen hundred cases of
No. 3 canned pears at $6.00 per case and promised to give
the defendant shipping instructions for same, and shall fur-
ther believe from the evidence that the Eastern Shore Broker-
age & Commission Company paid unto the defendant five
thousand dollars on account of the purchase price of the said
fifteen hundred cases of No. 3 canned pears and failed to give
shipping instructions for said pears, and shall further believe
from the evidence that the Eastern Shore Brokerage & Com-
mission Co. failed to pay unto the defendant the balance of
the purchase price of said pears, then the defendant had a
right to hold possession of said pears until the balance of the
purchase price of same was paid.

*Defendant's Fifth Prayer.*—If the jury shall believe from
the evidence that the contract of sale of the pears was made
as set out in the defendant's first prayer, and that as a part
of the said contract the said Eastern Shore Brokerage & Com-
mission Company promised to give to the defendant shipping
instructions for the shipment of the said pears, and that the
defendant several times called upon the said Eastern Shore
Brokerage & Commission Company for such shipping in-
structions of the said pears, and that the said Eastern Shore
Brokerage & Commission Company failed to furnish any
shipping instructions, and that the defendant held the said
pears awaiting such instructions and afterwards sold a part
of the said pears with the consent of the said Eastern Shore

Brokerage & Commission Company, then the defendant is not responsible in this case for holding the said pears, or any of them.

*Defendant's Sixth Prayer.*—The defendant prays the court to instruct the jury that the burden is upon the plaintiff to establish by a preponderance of evidence satisfactory to them that the defendant is indebted unto the Eastern Shore Brokerage & Commission Company, and if the evidence in this case should be such as to leave the minds of the jury in a state of equipoise or even balance as to whether the defendant is indebted unto the Eastern Shore Brokerage & Commission Co., then their verdict should be for the defendant.

*Defendant's Seventh Prayer.*—The defendant prays the court to instruct the jury that under the pleadings and evidence in this case, there is no legally sufficient evidence to entitle the plaintiff to recover, and their verdict should be for the defendant.

*Defendant's Eighth Prayer.*—The defendant prays the court to instruct the jury that the plaintiff is not entitled to recover under the pleadings and evidence in this case for any damages done The Eastern Shore Brokerage & Commission Co., if they believe the said brokerage company was damaged due to the holding of the said pears or any of them.

The defendant's special exceptions were as follows:

*To Plaintiff's Fifth Prayer.*—The defendant excepts specially to the plaintiff's fifth prayer for the following reasons:

(1) Because there is no legally sufficient evidence to support the hypothesis of said prayer.

(2) Because the words "or growing out of the transaction concerning the 1,500 cases of pears" are ambiguous and uncertain and calculated to mislead the jury.

*To Plaintiff's Eighth Prayer.*—The defendant excepts specially to the plaintiff's eighth prayer for the following reasons:

(1) Because there is no legally sufficient evidence to sustain the hypothesis of said prayer.

(2) Because there is no legally sufficient evidence to show

that the Eastern Shore Brokerage & Commission Company made known to the defendant that it did not intend to accept and pay for said pears.

( 3 That there is no legally sufficient evidence to show that the defendant did not realize as much from the sale of said pears as he could have realized had said 1,500 cases of pears been sold when it is alleged that the defendant knew of the intention of the Eastern Shore Brokerage & Commission Co., not to accept and pay for same.

*Defendant's Special Exception to Plaintiff's Ninth Prayer.*—The defendant excepts specially to the plaintiff's ninth prayer for the following reasons :

(1) Because there is no legally sufficient evidence to sustain the hypothesis of said prayer.

(2) Because there is no legally sufficient evidence to show that a term of the agreement of sale was that delivery should be made immediately.

(3) Because the said prayer omits the fact that the Eastern Shore Brokerage & Commission Company was to give shipping instructions for the shipment of said pears.

(4) Because there is no legally sufficient evidence to show that the defendant has been in any wise negligent in the caring for said pears, or any of them, during the time they have been in storage in his warehouse.

(5) Because it was not the duty of the said defendant to have sold said pears on the market because the pears belonged to the Eastern Shore Brokerage & Commission Company and the defendant had a lien on same for the unpaid purchase money due thereon.

The cause was argued before URNER, ADKINS, OFFUTT, BOND, and PARKE, JJ.

*James E. Ellegood* and *F. Leonard Wailes,* with whom were *Ellegood, Freeny & Wailes,* and *Clarence P. Lankford* on the brief, for the appellant.

*Frederick H. Fletcher* and *F. W. C. Webb,* with whom were *Fletcher & Fletcher* on the brief, for the appellee.

ADKINS, J., delivered the opinion of the Court.

This case was on the docket of the January term and was heard during that term. On motion of appellee a re-argument was granted and heard during the present term. Before the re-argument a motion was made to dismiss the appeal on the ground that the record was not transmitted to this Court "within three months from the time of the appeal taken" as required by Code, art. 5, sec. 6 (Rule 2 of this Court). No such motion was made at or before the previous argument.

In the view we take of the matter it will not be necessary to decide how far, if at all, that omission affects the present motion, as we do not think it ought to have been granted even if it had been made before the former hearing.

Section 40 of article 5 of the Code (Rule 18) provides that no appeal shall be dismissed because the transcript shall not have been transmitted within the time prescribed, if it shall appear to the Court of Appeals that such delay was occasioned by the neglect, omission or inability of the clerk or appellee, but such neglect, omission or inability shall not be presumed, but must be shown by the appellant.

The appeal was taken October 6th, 1923. The record was transmitted to this Court on January 11th, 1924, five or six days after the three months' period had expired. It was therefore, under Rule 18, incumbent upon appellant to show that the delay was occasioned by the neglect, omission or inability of the clerk or appellee. Mr. James E. Ellegood, one of appellant's attorneys, filed an affidavit in this Court, in which it is alleged:

That (and this appears from the docket entries) the time for filing exceptions was extended by the trial court until December 15th, 1923, because of the delay on the part of the court stenographer in presenting appellant's counsel with a copy of the testimony; that counsel for appellant instructed the stenographer immediately after the rendering of the judgment to transcribe the testimony and furnish them with a copy of same, and on several occasions called upon him for it, but did not receive it until November 28th, 1923; that they proceeded promptly to prepare the exceptions, and com-

pleted and filed same with the court on December 12th, 1923, three days before the time allowed by the extension; that a copy of said exceptions, together with a copy of the testimony, was placed in the hands of counsel for appellee at the request of the trial court; that appellee's counsel revised them by copying from the evidence more fully than counsel for appellant had done, and held them for more than a week; that the court raised no objection to the exceptions in the form that they were submitted by appellant's counsel, but signed them as revised by counsel for appellee, as appellant's counsel did not object to the changes that had been made; that after the exceptions had been duly approved and signed by the court the clerk proceeded with diligence to make up the record for the Court of Appeals; that since December 12th, 1923, neither the appellant nor his counsel have had any control over the exceptions or the record; that counsel for appellant were insistent upon having the record in the case made up and transmitted within the time required by law, and that appellant and counsel did everything they could to hasten the making up and forwarding of the record.

The affidavit of the deputy clerk alleges that it was his duty to make up the record in this case; that to the best of his recollection the signed bills of exception were filed in the clerk's office not earlier than January 7th, 1924; that he completed and mailed the record on January 11th, 1924; that he made up the record just as quickly as it was possible to be done; that the delay in making up and transmitting the record was not due to any neglect, omission or inability of the clerk.

It is thus apparent from both of the above affidavits that no fault attached to the clerk. Can any part of the blame then be attributed to the appellee or its counsel, or to the trial court?

The affidavit of Frederick H. Fletcher, one of the appellee's attorneys, alleges that a duplicate copy of the draft of the bills of exception was submitted to him on or about the 13th day of December, 1923; that they did not, in his judgment, fairly present the evidence or the rulings of the court;

that he promptly took up the matter, and in about a week submitted to the trial court the suggestions of the appellee as to the form of such bills of exception, which required the re-writing of over half the amount of the bills of exception as they appear in this Court; that said redraft was not objected to by counsel for appellant and was accepted by the court as the proper form of the bills of exception.

Under all the facts, as they appear from the above affidavits, we are unable to say that counsel for appellee did not, at least, participate in the delay. The one having charge of the matter gives it, as his opinion, that there would have been greater delay if he had not redrafted the bills of exception; but in view of the shortness of the time remaining, we think a week should not have been required to suggest such changes as he thought should be made; and it might well be that, with these suggestions, counsel for appellant could have shaped up the exceptions and had them signed in a shorter time.

Apparently appellant's counsel made no objection to any changes suggested by counsel for appellee, but there is nothing to show that the court required them to be made or would have refused to sign the exceptions as originally offered.

When the failure to transmit the record on an appeal within the time prescribed appears to have been caused by the appellee as well as the appellant, the appeal will not be dismissed on account of the delay. *Forest Lake Cemetery* v. *Baker,* 113 Md. 529. See also *McConigal* v. *Plummer,* 30 Md. 422; *Hopper* v. *Beck,* 83 Md. 647.

It appears from Mr. Fletcher's affidavit that his redraft of the bills of exception was presented to the court in about a week after December 13th, and that the redraft was promptly accepted both by counsel for appellant and the court. It is not, therefore, apparent why the court should have delayed signing them for more than two weeks. This ought not to be charged to appellant, as it does not appear that his counsel had the slightest reason to anticipate such delay, and therefore they were not charged with the duty of taking steps *at once* to require the trial court to act. The bills of excep-

tion were signed as of December 12th, 1923, but it is apparent that they were not actually signed until a later date.

The situation was entirely different in the case of *Marx v. Reinecke,* 142 Md. 342, cited by appellee. There appellant permitted months to elapse without taking steps to amend his bills of exception in accordance with the suggestion of the court, after being told by the trial judge that they were not in proper form as offered; and, while insisting they were in proper form, did nothing to require the judge to sign them.

The motion to dismiss the appeal must be overruled.

The Eastern Shore Trust Company, appellee, caused to be issued out of the Circuit Court for Dorchester County, directed to the sheriff of Somerset County, a writ of attachment on a judgment obtained by it against The Eastern Shore Brokerage and Commission Company.

The record shows that this writ was entered on the docket of the Circuit Court for Somerset County, but it does not appear that a copy of the docket entries in Dorchester County was sent with the writ, as required by section 7 of article 17 of the Code.

The attachment was laid in the hands of Charles A. Lockerman, the appellant, and he was summoned as garnishee. He appeared by counsel and pleaded *nulla bona.* The case was moved to Wicomico County and tried before a jury, which rendered a verdict in favor of plaintiff. This appeal is from the judgment entered on that verdict.

It is contended by appellant that the trial court was without jurisdiction, because it does not appear from the record that the provisions of the statute giving the court jurisdiction were substantially complied with, there being nothing in the record to show that a copy of the docket entries was sent with the writ or ever filed in Somerset County.

A petition for writ of diminution was filed in this Court by appellee, in which it is alleged that a copy of the docket entries in Dorchester County accompanied the writ of attachment sent to Somerset County, but that it does not appear in the record in this Court that they were contained in the

record sent from Somerset County to Wicomico County; and asking that the record be corrected. At the argument, counsel for appellant agreed, if the record could be corrected by the writ of diminution, the record should be considered as amended to show that a copy of the docket entries was sent with the writ to Somerset County, but they contended that the necessary correction could not be made by such a writ, because it could only be issued to the court where the case was tried and from which, on appeal, the record was sent.

It was not contended by counsel for appellee that a writ of diminution issued to the trial court would cure the omission in the record.

It thus appears by the agreement at the argument of counsel for the respective parties, that the law was complied with in issuing the writ of attachment from Dorchester County to Somerset County and that it was accompanied by a copy of the docket entries, which were duly filed in Somerset County, but that fact is not shown by the record sent from Somerset to Wicomico County.

The question therefore is: It appearing by the agreement, and this Court being thus informed, that the Circuit Court for Somerset County had in fact jurisdiction, on removal of the case to the Circuit Court for Wicomico County, did that court lack jurisdiction to try the case because the record sent to the latter court did not show all the facts necessary to give the former court jurisdiction? We think not. It was the *fact* that the court from which the case was removed had jurisdiction, and not the knowledge of that fact by the trial court, which determines the question, on appeal to this Court, and when it is agreed that the *fact* existed, it has the same effect as if it appeared in the record. If a motion had been made in the trial court to quash the writ, that court would have required or permitted the production of the necessary evidence of the existence of the jurisdictional fact in the court from which the record was sent. There having been no such motion, and the parties having gone to trial on the record as it was sent, they cannot now raise the question of its incompleteness, if, indeed, it was necessary

to completeness that the docket entries in a case docketed against a garnishee should show all the facts necessary to give the court jurisdiction to proceed under the attachment. As a matter of fact the clerk of the Circuit Court for Somerset County certifies, in an affidavit filed in this court, that the attachment and the garnishee cases were docketed separately, as is the usual practice.

We hold that the trial court had jurisdiction, and that it so appears from the record as supplemented by the agreement of counsel.

The record contains ten bills of exception, the first nine relating to the rulings on evidence and the tenth to the rulings on motions to strike out testimony and on the prayers.

On October 10th, 1919, there was a transaction between Lockerman and the Eastern Shore Brokerage Company, through its manager of sales, James A. Colbert, in regard to the disposition of fifteen hundred cases of canned pears in the factory of Lockerman, resulting in the passing by Colbert to Lockerman of a check of said company for five thousand dollars signed by its president and treasurer. The contention of appellee is that the check was a loan to Lockerman on his pack; and that no part of the loan was ever paid. Lockerman, on the other hand, contends that he sold the pears to the brokerage company at six dollars per case of two dozen cans f. o. b. factory, to be shipped as ordered, and that the check was a payment on account.

There is evidence to support both theories. There is also evidence tending to show that Lockerman was indebted to the brokerage company in the amount of $454.13 for commissions on sales made on commission.

Appellee further contends that even on appellant's theory, that the pear transaction was a sale, it was the duty of the vendor, when he learned that the brokerage company repudiated the sale and declined to take the goods, to sell them at once at the market price, and that any loss resulting from his failure to do so, either by reason of decline in price or deterioration in condition, must be charged to him, and that

he was liable in damages for failure to take proper care of the goods.

Taking the exceptions in order:

We find no error in the rulings to which the first nine exceptions relate except the fourth, and that was not prejudicial.

The first was to the refusal to strike out the testimony of the witness Colbert as to samples of canned goods not being approved, because he states that he knew it only through his broker. In the first place it would be impracticable to get such information in any other way. And then the witness had previously testified that the goods were sold subject to approval and the samples were to be sent to a broker.

The second and third were to the refusal to strike out certain testimony as hearsay. The exception should have been taken at the time of the admission of the testimony, as its character was then apparent.

The question objected to in the fourth was not answered, so there was no injury.

The fifth was to the refusal to strike out hearsay testimony of a witness for plaintiff, but such testimony was brought out only on cross-examination, and directly asked for.

The sixth, seventh and eighth relate to testimony which was properly admitted to contradict testimony of the defendant, Lockerman.

The ninth was to the striking out of the testimony of Lockerman as to the amount he received from the sale of pears after it had been agreed that they should be sold by him without prejudice to the claim of either party. This testimony was relevant and striking it out was prejudicial error.

The tenth is bad in form. It embraces in one exception rulings to motions to strike out testimony and on prayers and special exceptions. It will not be considered as to the motions but only as to the rulings on the prayers and special exceptions thereto. See *Harris* v. *Hipsley,* 122 Md. 436, and cases there cited.

The Reporter is requested to set out all the prayers appearing in the record.

There was no error in granting plaintiff's second prayer.

The third, fifth, eighth and ninth should have been refused, and the granting of them was prejudicial error.

The third puts the burden of proof on the defendant to show that the pear transaction was a sale. There is no such rule of law. The burden remained with the plaintiff to prove the indebtedness of the garnishee to the judgment debtor and if this was negatived by proof of a sale then the burden was on plaintiff to prove that the transaction was not a sale.

The fifth is misleading and tends to confuse. Besides it tends to exclude the right of garnishee to offset the amount due him for balance of purchase money, if the jury should find a sale and a balance due, against the amount due by garnishee for commissions. There was no reversible error in overruling the special exceptions to this prayer, as the first assignment was too general, and the second is subject to the general exception.

The eighth and ninth announce the proposition that notwithstanding a sale and a wrongful refusal of the purchaser to accept the goods, the vendor, in a suit by vendee, could be held responsible for loss following failure to sell the goods at the market price when he learned that the vendee had repudiated the contract, if there was a decline thereafter in price or a deterioration in the condition of the goods. No authority is cited in support of such a principle, and we know of none.

The authorities cited by appellee deal with suits *by vendors against vendees.* In such suits the defendant is entitled to have the claim *against* him reduced by such amount as would have been saved if the vendor had done what he could to reduce his loss. But the vendee who breaks his contract is not in a position as *plaintiff* to invoke such a principle. The eighth is also open to the objection, referred to in considering the fifth, that it tends to exclude the consideration of defendant's right of set off; and the ninth submits a fact to be found by the jury of which there is no evidence, viz.:

that it was a term of the contract "that delivery of said pears should be made immediately"; and the court's attention was called to this by a special exception, which should have been granted. There was no error in overruling the other special exceptions to the eighth and ninth prayers.

There was error in refusing defendant's first prayer. It sought to have the jury instructed, in effect, that there could be no recovery in this action as to any part of the five thousand dollars check if the jury found that the pear transaction was a sale.

There was no error in the refusal of defendant's second, third, fourth, fifth, seventh and eighth prayers. The third is defective in that it takes no account of the amount received by defendant for the goods sold by him under the agreement.

The fourth is inconsistent with all the testimony, even defendant's testimony showing that the terms of the sale were that the goods would be delivered on receiving shipping instructions. He does not claim he held them because of failure to pay the balance of the purchase price. In any event the ground is covered by the first.

The fifth, so far as it is good, is covered by the first. The second is covered by the first.

The seventh is bad in that it refers to the pleadings, without specifically pointing out in what respect there is a variance. But even if considered as a demurrer to the evidence, it was properly refused, because there is evidence proper to be submitted to the jury.

The eighth is bad in form at least. For the purposes of this case whatever may be good in it is covered by the first.

> *Previous order in this case rescinded. Judgment reversed and new trial awarded, with costs to appellant.*

PARKE, J., dissents from the ruling on the motion to dismiss.