## WALSH, Garnishee *v.* LEWIS SWIMMING POOL CONSTRUCTION COMPANY, INC.

[No. 192, September Term, 1969.]

*Decided February 5, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

*Lance W. Billingsley* for appellant.

*Solomon L. Margolis,* with whom were *Stanley H. Kamerow* and *Allan L. Kamerow* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

We are here concerned with the propriety of a judg-

ment of condemnation entered in favor of an attaching creditor, appellee, Lewis Swimming Pool Construction Co., Inc. (Lewis), against appellant, John P. Walsh (Walsh), as garnishee. We shall reverse the action of the trial judge. The facts will be developed in the course of the opinion.

In an attachment action the test of the liability of the garnishee is whether he has funds, property or credits in his hands, the property of the debtor, for which the debtor would have the right to sue. *Peninsula Insurance v. Houser*, 248 Md. 714, 717, 238 A. 2d 95 (1968) ; *Messall v. Suburban Trust*, 244 Md. 502, 506, 224 A. 2d 419 (1966) ; and *Bendix Radio Corp. v. Hoy*, 207 Md. 225, 229, 114 A. 2d 45 (1955). The burden of proof is on the attaching creditor. *Eastern Shore Trust Company v. Lockerman*, 148 Md. 628, 634, 129 A. 915 (1925) ; *Lockerman v. Trust Company*, 146 Md. 330, 348, 126 A. 140 (1924) ; and 2 *Poe, Pleading and Practice* § 561 (Tiffany's ed. 1925). To recover, Lewis must present evidence legally sufficient to prove a liability of Walsh which existed when the writ was issued or when the case was tried. *Cueva Co. v. Williams & Co.*, 145 Md. 526, 530, 125 A. 849 (1924). The rights of the parties become fixed in Maryland at the time of trial and judgment. *Messall v. Suburban Trust, supra*, at page 507, and *Nicholson v. Crook*, 56 Md. 55, 57 (1881).

This case was tried before the court without a jury. Therefore, under Maryland Rule 886 a the judgment of the trial court will not be set aside on the evidence unless clearly erroneous. If there is substantial evidence to support the court's factual conclusion, those findings must be reviewed in the light most favorable to the prevailing party below. *Operations Research v. Davidson*, 241 Md. 550, 556, 217 A. 2d 375 (1966), and cases there cited.

With that background of the law, we turn to the facts of this case. Lewis is a swimming pool contractor. It entered into a contract with Politz-Dayhoff & Company for the installation of a pool at The Litzhoff Apartments at Oxon Hill in Prince George's County. The contract

provided for delivery of a note "[u]pon completion of the work, or upon completion to a point where further completion is precluded by action or failure to act of Politz -Dayhoff Company or other factor uncontrolled by Lewis Pools", the note to be from Politz-Dayhoff & Company, "endorsed by Messrs. Politz & Dayhoff and in the principal amount of $18,500.00, payable in full on or before May 15, 1967." [1] The full contract price was $18,500.00.

This case arises from judgment entered on a note signed by James E. Dayhoff and James C. Politz as general partners of Alpine Apartments Limited Partnership and by each individually. Judgment was entered accordingly. The note apparently was the note called for in the contract, although it was for $19,000.00 and from parties differing from those in the contract. The date of entry of the judgment does not appear, nor does it appear to be vital here.

Lewis issued two attachments on the judgment. Both attachments were laid in the hands of Walsh. The first attachment was directed to any assets of Alpine Apartments Limited Partnership. The second attachment was intended to reach any assets of Messrs. Dayhoff and Politz in the hands of Walsh in addition to those of Alpine.

Walsh was called as a witness by Lewis. He was the rental agent for the Alpine Apartments (the name apparently used after completion of the apartments). The trial judge said:

> "At this hearing Walsh testified that he was asked by Dayhoff and Politz to manage the property for them, they said nothing about a corporation, he assumed he was managing for the owners, didn't know who [the] owners were but issued checks on instructions from Dayhoff and

1. The contract as printed in the record extract reflects payments to be made at various times before completion. In the actual contract filed as an exhibit in the proceeding these provisions have been struck through with a statement inserted to see the reverse side for terms. The provisions relative to note appear on the reverse side and are printed in the record extract.

Politz, and no one other than these two authorized any disbursements. Walsh also testified that prior to the attachment he paid upon their request a total of $4,000 by four $500 checks each to Politz and Dayhoff individually, out of the account. Walsh was told by Politz when the attachment was served on him to turn the papers over to Politz' attorneys."

This summary by the trial judge is a correct statement of the testimony. It is his only statement relative to the evidence. He made no specific finding of facts. After discussing the law, the trial judge said:

"My conclusion is that on January 10, 1968, when the account amounted to $7,768.63, this was subject to being drawn out by either Alpine Apartments Limited Partnership or either of the general partners, individually, and was therefore subject to attachment on the judgment against the defendants."

The difficulty we here encounter is that there was evidence before the court to which no reference is made and there was no evidence of ownership of the funds by Alpine Apartments Limited Partnership. It is undisputed that the title to the apartment house was in Central Gardens, Inc. No evidence was presented of any assignment by the corporation of the rents in the form of a lease of the apartment building or otherwise. There was presented in evidence a contract entered into by *Center* Gardens, Inc., with Bakst Service, Inc., granting it the exclusive right to install washing machines and dryers in the building. There is no testimony reflecting upon this name which we assume to be a misnomer. That contract was dated February 2, 1967. There was also presented in evidence copy of a contract dated December 15, 1966, signed by Walsh as agent for Central Gardens, Inc., with Hennage Creative Printers for preparation of a brochure. Also filed was the invoice for the printing of the bro-

chure which was addressed to Central and was dated February 27, 1967.

Walsh in a deposition stipulated into evidence stated that Politz and Dayhoff were the persons with whom he dealt, that he entered into a verbal contract in which he agreed to manage the Alpine Apartments, that they turned the account of Alpine Apartments over to him, that he never dealt with Alpine Apartments Limited Partnership, that he did not know for whom Politz and Dayhoff were acting when they retained him, and that he had paid an occasional $500.00 to each of these gentlemen, the funds for which came from the account known as "John P. Walsh Company Alpine Regular." The source of the funds in the account was the rents collected from the apartment. He said Politz and Dayhoff were the only people who could direct him to make payment.

Walsh testified before the trial judge that he began management in December of 1966, that Politz and Dayhoff asked him to manage for the owners, that they did not indicate that they were or were not the owners, that he did not know the actual ownership entity when he was hired, and that prior to the attachment he did not inquire as to the actual ownership. The last statement might be deemed at variance with the contracts that were signed in the name of the corporation, but his explanation is that he was told to put the contract in the name of the corporation, that it would be responsible. Walsh claimed that after the attachment he did begin to make inquiry and that is when he contacted the organization to which he was making payments on the mortgage and when he checked the land records and assessment records, ascertaining that the property was owned by Central Gardens, Inc. Walsh presented a letter from the corporation to which mortgage payments were being made. This letter was dated prior to the attachment. It enclosed an amortization schedule marked "Central Gardens".

On the matter of payments to Politz and Dayhoff the testimony of Walsh is as follows:

"THE WITNESS: On August 27 of '67, Check No. 250 and No. 251 in the amount of $500 each, one to Politz and one to Dayhoff.

\* \* \*

"Q. These checks were made payable to these gentlemen individually, isn't that correct? A. They were made in their names, yes, sir, James C. Politz, James E. Dayhoff.

"Q. Could you give us the rest of that chronology? A. Yes, sir.

"On September 11 of '67, Checks numbered 275 and 276 in the amounts of $500 each were paid in the same names.

"Q. Individually? Is that not correct? A. Let me check the stubs, sir. In the individual names, yes, sir.

"On October 9 of 1967, Checks numbered 308 and 309 in the amounts of $500 each—

"Q. Also individually? A. Those were also individually.

"On December 15th, Check No. 376 was for $500 in the name of James E. Dayhoff. On December 19, 1967, Check numbered 390 in the amount of $500 in the name of James C. Politz.

"Q. Have you written any other checks to Politz or to Dayhoff? A. No, I have not.

"Q. Have you written any checks whatsoever to Central Gardens, Incorporated? A. No, I have not.

"Q. Have you written any checks whatsoever to Politz-Dayhoff & Company, Incorporated? A. No, I have not.

"Q. Could you tell us, sir, why—since you got this advance from the corporation—you made the checks payable to these gentlemen individually? A. I was asked to make the checks payable in that fashion by the gentlemen, by Mr. Politz.

"Q. By Mr. Politz and Mr. Dayhoff? A. Yes, sir.

"Q. Let me ask you—A. By Mr. Politz, sir.

"Q. I am sorry. Mr. Politz alone? A. Right. I do not recall Mr. Dayhoff asking me.

"Q. Do you recall ever being called by Mr. Dayhoff for his check? A. No, I do not.

"Q. What was your criterion as to when you would write a check out of this account to Politz or Dayhoff? A. Basically when they asked me for it up to a certain point. I refused issuing checks to them after the original $4,000 advance had been refunded to them.

"Q. On whose instructions did you refuse? A. I refused on the basis that I had been served with a garnishment. And I did not want to disburse any funds that might be in question as going to them as individuals.

"Q. But for the issuance of that attachment, though, isn't it true that you would have continued to write checks to them as they asked individually? A. Upon their instructions as officers of the corporation.

"Q. Upon their instructions as officers of what corporation? A. Central Gardens, Incorporated.

"Q. When did you ascertain that Central Gardens, Incorporated had anything to do with this case? A. I definitely ascertained immediately upon receiving the first attachment, because I wanted to find out what money I had and who it definitely and truly belonged to."

Two cancelled checks were introduced into evidence which corroborated Walsh's testimony that Messrs. Politz and Dayhoff put up $4000.00 as a fund with which he could operate the Alpine until sufficient rents had been collected. Both checks were drawn on the trustee account of Politz-Dayhoff & Company. The first was dated December 9, 1966, payable to "John P. Walsh Co." and was

marked "To open rental account: Alpine". The second check, also in the amount of $2000.00, was dated March 18, 1967. It was drawn to the same payee and is marked "rental account advance Alpine". The first check was endorsed "John P. Walsh Co. John P. Walsh—owner". The second check, however, was endorsed "For deposit to the a/c John P. Walsh—Alpine Reg.".

Lewis in its brief states that it "was induced to enter into a contract with one James C. Politz and James E. Dayhoff, * * * who held themselves out * * * as the owners of certain land in Prince George's County." This may be true. Significantly, however, Lewis accepted a note under that contract from a different entity than that with which it had contracted and for an amount in excess of that specified in the contract. Such an inducement, if it existed, would fall into the same category with our own observation that Messrs. Walsh and Dayhoff were not the most satisfactory witnesses who ever took the stand, their candor at times leaving something to be desired. However, none of those things could change the fact that to recover in this case the burden was upon Lewis to establish that Politz and Dayhoff were in a position to legally demand from Walsh that he pay over to them the funds in hand. The evidence falls woefully short of this. In the absence of evidence of a lease or an assignment of rents it would be presumed that the owner of the apartment house, Central Gardens, Inc., was entitled to the rents from the various apartments. No evidence was presented of any lease or assignment. The fact that Politz and Dayhoff were officers of Central Gardens, Inc., in no way alters the situation. The burden was on Lewis to establish title to the funds in Politz and Dayhoff. He has not done so. Therefore, we conclude upon the basis of the facts presented in the record extract the trial judge erred in entering judgment in favor of Lewis. We do not rule out the possibility that there may have been other evidence presented which has not been reproduced in the record extract. For instance, one of the parties in their brief makes reference to Politz and Dayhoff, Inc., as be-

ing the general contractor which built the apartment building, and, also, to all of the stock of Central Gardens, Inc., as being owned by Ruffner Property Joint Venture, none of which appears in the record extract. These two items, if properly before us, could not change our decision in this case, but are offered by way of example only. This Court has heretofore made it abundantly plain that the provision of Maryland Rule 828 b 1 specifying that the printed extract *shall* contain such parts of the record as are reasonably necessary for the determination of the questions presented on appeal is a mandatory requirement. *Riggs Nat'l Bank v. Welsh*, 254 Md. 207, 218-19, 254 A. 2d 172 and 255 A. 2d 289 (1969); *State Roads Comm. v. Sharper*, 231 Md. 411, 413, 190 A. 2d 647 (1963); and *Platt v. Wilson*, 191 Md. 371, 373, 62 A. 2d 191 (1948).

Lewis had available to it under Maryland Rule 628 relative to supplementary proceedings a procedure by which Messrs. Politz and Dayhoff could have been extensively questioned under oath concerning their individual assets and the assets of Alpine Apartments Limited Partnership. A more productive result might have been obtained if that procedure had been followed.

> *Judgment reversed, appellee to pay the costs, and judgment entered for the garnishee for costs.*