LaFORCE ET AL. *v.* BUCKLIN ET AL.

[No. 243, September Term, 1970.]

*Decided February 5, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, SINGLEY, SMITH and DIGGES, JJ.

*Pierre J. LaForce,* with whom was *Alfred L. Scanlan* on the brief, for appellants.

*Joseph P. Blocher,* with whom were *Linowes & Blocher* and *R. Robert Linowes* on the brief, for Mass-Goldsboro Joint Venture, part of appellees; and *David L. Cahoon, County Attorney,* and *Robert G. Tobin, Jr., Assistant County Attorney,* on the brief, for Erwin W. Bucklin, other appellee.

SMITH, J., delivered the opinion of the Court.

We shall here be obliged to interpret a Montgomery County zoning ordinance relative to the permitted height of a building in a commercial zone. We shall affirm the order of the trial judge (Moore, J.) who wrote a very able and comprehensive opinion permitting the construction. We shall also be concerned with the application of Maryland Rule 882 c relative to the Court's discretion in the assessment of costs, since one party has printed unnecessary material.

As the trial judge observed in his opinion, the property here involved is familiar to this Court, being the same property involved in *Montgomery County v. Walker,* 228 Md. 574, 180 A. 2d 865 (1962) ; *Robertson v. Board of Appeals,* 210 Md. 190, 122 A. 2d 751 (1956) ; and *Hayden v. Walker,* 208 Md. 114, 117 A. 2d 109 (1955). It is located on the north side of Massachusetts Avenue Extended in Montgomery County. It is bounded on the west by Goldsboro Road and by Avalon Drive on the east. It comprises 2.2845 acres. It is zoned C-1 (Local Commercial), has been so zoned since 1942, and, as Judge Moore

put it, "is surrounded by a residential community of substantially built homes."

Appellants, neighboring property owners (LaForce), when they learned that a building permit had been issued to appellees who are known as "Mass-Goldsboro Joint Venture" (Mass-Goldsboro) for the construction of a building to be used for offices and retail facilities, appealed to the Montgomery County Board of Appeals contending that the permit was in violation of the height requirements of the Montgomery County Code (1965) set forth in § 111-20 (e) for a C-1 zone (Local Commercial). That section provides:

> "The height limit for a building shall be two and one-half stories, but not over thirty-five feet."

It then defines in § 111-2:

> *"Building, height of.* The vertical distance measured from the level of approved street grade opposite the middle of the front of a building to the highest point of roof surface of a flat roof; to the deck line of a mansard floor; and to the mean height level between eaves and ridge of a gable, hip or gambrel roof; except, that if a building is located on a terrace, the height above the street grade may be increased by the height of the terrace. In the case of a building set back from the street line thirty-five feet or more, the building height is measured from the average elevation of finished ground surface along the front of the building. On corner lots exceeding twenty thousand square feet in area, the height of the building may be measured from either adjoining curb grade. For lots extending through from street to street, the height may be measured from either curb grade."

The Board of Appeals affirmed the action of the building inspector in granting the permit and the circuit court affirmed the action of the Board of Appeals.

The building is located approximately 55 feet from Avalon Drive and about 45 feet from Goldsboro Road. The lot is a sloping one. The parties apparently are able to agree that the average elevation of the land on Avalon Drive is 240 feet above mean sea level while the average elevation on Goldsboro Road is 216 feet. Although the building is five stories in height, its actual height above the curb line of Avalon Drive is 27½ feet. Mass-Goldsboro proceeded with construction and occupancy of the building during the trip of this case through the courts.

LaForce contends:

"The building height definition section provides, in effect, two measuring points with respect to buildings. One such measuring point is to be utilized when construction is within 35 feet of the street line; the other is to be referred to when the building is set back 35 feet or more from the street line. No exemption is created for corner or through lots from this 35-foot provision and, indeed, none was intended. The sole purpose of the separate provisions for corner and through lots was simply to give the owner-developer of the corner or through lot the option of choosing either adjoining street grade as a measuring point since, by the very nature of a corner or through lot, either street grade may be significant with respect to the building to be constructed."

We do not read the ordinance that way. As we read it, if this were an interior lot, measurement would be from the street grade, except that if the building were set back more than 35 feet from the street the point of measurement would be "the average elevation of finished ground surface along the *front* of the building." (Emphasis added.) One speaks of "front" as a point of measurement on an interior lot because the front would be the portion exposed to public view, but one would have substantial difficulty in determining the "front" of many commercial

buildings on corner or through lots. The ordinance defines many terms but it does not define "front". The ordinance could have spoken of measurement along the base of the building facing the street with reference to which it is to be measured. Then it clearly would have called for measurement from the setback line in all situations. Here, however, it spoke only of "front".

The lot here in controversy is one "extending through from street to street". There the option is granted of "measur[ing height] from either adjoining curb grade", just as in the case of a corner lot exceeding 20,000 square feet in area the option is granted to measure from either adjoining curb grade.

We think the Appeals Board had it about right when it said:

> "To construe the Ordinance as suggested by [LaForce] would result in there being no distinction between buildings, if set back at least thirty-five feet from the street line, whether they be located on interior, corner, or through lots. Clearly, the Ordinance intends that there be a distinction and a different yardstick in the case of corner or through lots."

In this case Mass-Goldsboro printed an appendix of 192 pages. The opinion of the Board of Appeals included in the appendix had been printed in the record extract of LaForce. A portion of the brief of Mass-Goldsboro and a substantial part of the appendix were devoted to the contention of Mass-Goldsboro that LaForce was not an aggrieved party permitted to appeal to the Board of Appeals or to the circuit court and to the contention that the appeal to the Board of Appeals had not been properly filed. These points were not before us since the trial judge ruled in favor of LaForce and against Mass-Goldsboro on those points and no cross appeal was taken. A great mass of testimony was printed which was not necessary for a decision in this case. No statement under Rule

828 e was made by Mass-Goldsboro as to the reason for printing this mass of material.

It is true that we have commented unfavorably, as Mass-Goldsboro urged in a motion to dismiss (subsequently abandoned), relative to the failure of parties in certain instances to print a record extract which complies with the requirements of Rule 828. See, for instance, *Viner v. Manor Country Club*, 258 Md. 299, 265 A. 2d 857 (1970), and we have commented on the mandatory requirements of the rule. *Walsh v. Lewis Swim. Pool Constr.*, 256 Md. 608, 617, 261 A. 2d 475 (1970) ; *Cohen v. Am. Home Assurance Co.*, 255 Md. 334, 349-50, 258 A. 2d 225 (1969) ; *Riggs Nat'l Bank v. Welsh*, 254 Md. 207, 218, 255 A. 2d 289 (1969). We have been patient when record extracts might have been a little on the "light side" and we have not expressed ourselves when they might have been a little on the "heavy side", recognizing that it is not always possible for counsel to see such matters as we might see them. In this instance, the matter is brought to our attention. The appendix exceeds that which one might reasonably expect in a case of this kind. Therefore, in the light of this and in the light of the fact that as previously noted a substantial part of the appellees' brief was devoted to matter not properly before us, in accordance with Rule 882 c the cost of the appellees' brief and appendix will be paid by the appellees. *Operations Research v. Davidson*, 241 Md. 550, 576, 217 A. 2d 375 (1966), and *Martin v. United Slate Etc. Ass'n*, 196 Md. 428, 442, 77 A. 2d 136 (1950).

> *Order affirmed; appellees to pay the cost of their brief and appendix, remaining costs to be paid by appellants.*