## EASTERN SHORE TRUST COMPANY vs. CHARLES A. LOCKERMAN, GARNISHEE.

Garnishment—Transaction Between Garnishee and Debtor—
Evidence of Sale—Burden of Proof—Transaction
With Corporate Officer—Witnesses—Cross-
Examination—Statement of Conclu-
sion—Harmless Error.

In an attachment on judgment, where plaintiff claimed that certain goods were delivered by the garnishee to the judgment debtor merely for sale by the latter on commission, and that a payment by such debtor to the garnishee was merely a loan, *held* that the evidence in support of the garnishee's claim, that the goods were sold to such debtor, and that the payment was on account of the sale, was sufficient to go to the jury.  pp. 631-633

The mere fact that a company was engaged in the brokerage business did not prevent it from buying and selling merchandise on its own account.                              p. 633

Where one offered pears to a brokerage company for a price which the latter accepted, making a payment on account of its purchase, and telling the seller to hold the pears for shipping instructions, the contract was sufficiently definite to be enforced.
                                       p. 634

That in closing a contract for the purchase of pears the general manager of a canned goods brokerage company said, "the pears are mine," and the seller said, "the pears are yours," did not show as a matter of law that the purchase was by the manager as an individual, a large payment on account of the purchase being made by a check of the company.          p. 634

The burden was on plaintiff in an attachment on judgment to show that a certain transaction between the judgment defendant and the garnishee was not a sale, as it was claimed by the garnishee to have been, but was a loan.          p. 634

The burden on plaintiff of showing an indebtedness by the garnishee to the judgment debtor was not satisfied by showing merely the delivery of a check to the former by the latter, the former claiming that the check was delivered as a payment on

account of a sale alleged to have been made by the garnishee
to the judgment debtor.                                    p. 634

The objection that an instruction assumed a fact cannot be
considered on appeal if not made below.                    p. 634

On an issue as to whether a sale had been made to a certain
brokerage company, the president was properly asked on cross-
examination whether the company did not buy goods outright
as well as on commission, he having previously testified that the
company operated on commission.                            p. 635

On an issue as to whether a sale had been made to a certain
brokerage company, the exclusion of a question, sought to be
asked of the president, as to whether the directors authorized
such purchases on its own account, *held* harmless, since such a
purchase, unless prohibited by the constitution or by-laws, or
beyond the charter powers, was not invalid because not expressly
authorized, the purchase having been made by its general man-
ager and ratified by its president and treasurer.          p. 635

The statement of a witness that he had "sold" certain goods
to a named purchaser was not inadmissible as being of a con-
clusion of law, it being but a statement of fact.          p. 636

"To sell" ordinarily means to transfer to another for a valu-
able consideration the title to or the right to possess property.
                                                           p. 636

On an issue as to whether a sale of goods was made to a
brokerage company, the erroneous admission of testimony by
one of defendant's witnesses, not the alleged seller, that he had
sold similar goods to the company, *held* not cause for reversal, a
witness for plaintiff having also testified to such sale by defend-
ant's witness, and the instructions given having been so full
and explicit that the jury were presumably not affected by such
irrelevant testimony.                                      p. 636

On an issue as to whether a certain sale was made to a
brokerage company, the exclusion of certain minutes of the
company, offered to prove that the by-laws forbade such a pur-
chase, was properly refused, the only by-law referred to in the
minutes permitting such a purchase when deemed necessary by
the executive committee to avoid a loss, and the record not show-
ing that the purchase in question was not such.            p. 637

*Decided June 29th, 1925.*

Appeal from the Circuit Court for Wicomico County
(BAILEY and DUER, JJ.).

Attachment proceeding by the Eastern Shore Trust Com-
pany on a judgment against the Eastern Shore Brokerage and
Commission Company, laid in the hands of Charles A. Lock-
erman as garnishee. From a judgment in favor of said gar-
nishee, the plaintiff appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON,
URNER, ADKINS, OFFUTT, PARKE, and WALSH, JJ.

*F. W. C. Webb,* with whom were *J. Richard Jones* and
*Woodcock & Webb* on the brief, for the appellant.

*F. Leonard Wailes,* with whom were *Stanley G. Robins*
and *Ellegood, Freeny & Wailes* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

The Eastern Shore Trust Company, on June 10th, 1922,
took a confessed judgment against the Eastern Shore Brok-
erage and Commission Company, called herein the broker-
age company, for $4,485.10. In September, 1919, Charles
A. Lockerman, a canner operating at Crisfield, Maryland,
had fifteen hundred cases of pears which he wished to sell,
and as a result of negotiations between him and James A.
Colbert, general manager of the brokerage company, the lat-
ter sent Lockerman its check for $5,000. Later it asserted
that the $5,000 was loaned to Lockerman, but he claimed
that the brokerage company had bought his pears at $3 a
dozen cans, and that the $5,000 was paid on account of the
purchase. The Eastern Shore Trust Company, on the theory
that the transaction was a loan, caused an attachment on its
judgment to issue and to be laid in Lockerman's hands to
bind his supposed indebtedness to the brokerage company.

The case was tried twice in the Circuit Court for Wicom-
ico County. The first trial resulted in a judgment for the
plaintiff, which was reversed on appeal by this Court, and

the second in a judgment for the defendant, from which this appeal was taken.

There are eleven exceptions in the record, ten of which refer to questions of evidence and one to the court's action on the prayers.

The main and indeed the only issue in the case was whether the transaction between Lockerman and the brokerage company was a sale or a brokerage contract. If it was a sale, Lockerman owed the brokerage company nothing, but on the contrary it was indebted to him, and the appellant was not entitled to recover. If it was a brokerage contract, then Lockerman was indebted to the brokerage company for the $5,000 which it had advanced to him, as well as for certain brokerage commissions on other transactions, and the appellant was entitled to recover.

The plaintiff offered four prayers, of which the first and third were granted and the second and fourth refused; and the defendant four, all of which were granted. The plaintiff's first and third prayers submitted its theory of the case fully and fairly to the jury and we find no error in the refusal of its second prayer, nor was any point made of that ruling in this Court. The prayer was unnecesarily long and needlessly confusing to a jury, it improperly segregated and unduly emphasized certain parts of the evidence, it assumed facts which should have been submitted to the jury, and in substance it was covered by the granted prayer.

The appellant's principal objection to the court's rulings on the prayers, however, is based upon the refusal of its fourth prayer, and the granting of the appellee's third prayer. The appellant by its fourth prayer asked to have the jury instructed that there was no evidence in the case legally sufficient to show that the pears had been sold to the brokerage company, and in support of that proposition it says: (1) that there is no evidence in the case legally sufficient to show that the minds of the parties ever met in the formation of a sales contract; (2) that the alleged contract "is too vague and indefinite" to be enforceable; (3) that the evidence, if

it proves a sale at all, proves a sale to Colbert in his individual capacity; and (4) that Colbert lacked authority to buy the pears for the brokerage company and that Lockerman as a director of the brokerage company was charged with knowledge of Colbert's lack of authority to buy goods for it.

After what was said in *Lockerman v. Eastern Shore Trust Co.,* 146 Md. 330, it is unnecessary to review at length all the testimony in the case relating to the first question. It is sufficient to say that Lockerman in his testimony explicitly stated that he had "sold" the pears to the brokerage company; that on September 25th, 1919, he wrote the brokerage company the following letter: "We are shipping you 2 cans of our heavy syrup pears today by parcel post hoping you will be able to line some business at $3.25 per doz. We have not quoted a price to anybody less than $3.50." And that "in that letter, I quoted them $3.25 per dozen, and immediately upon receipt of that letter, he began calling me up and offering me $3.00 a dozen and I said 'No' on every occasion, and on October 9th, 1919, he called me up again. He said 'I want those pears, $3.00 is as high as they are going and let me have them at that price.' I said, 'Jim, I have about decided to take $3.00 for these pears.' He said, 'They are mine.' I said, 'No, not until I submit the samples.' I had forgotten the previous samples shipped September 25th or I would have accepted the offer at that time and sold immediately, but I wanted to be sure that he received samples. He said, 'All right, send me samples immediately,' and then he afterwards added, to send Reeves, Parvin Company of Philadelphia samples. I had my son-in-law go out and get six cans, get them up and shipped them parcel post the early afternoon mail of October 9th, leaving possibly about one o'clock at that time. The next afternoon, I shipped three cans to the Eastern Shore Brokerage & Commision at Preston. I shipped three cans to Reeves, Parvin & Company, Philadelphia. * * * On October 10th, about 26 hours after these samples were shipped, the telephone rang, John T. Handy, Williams Summers, commonly called Tiller, Mr.

Riley Parks and myself were in the office, which is a very small office about 10x12. I went to the 'phone, took down the receiver and said 'Hello,' and Mr. Colbert was at the other end. Some one said, 'Is this Mr. Lockerman, this is Mr. Colbert.' I said, 'Hello Jim.' He said, 'The samples arrived O. K., the pears are mine, I will send you $5,000 on account immediately and shipping instructions as soon as prepared.' I said, 'All right, Jim, send me $5,000 on account and the pears are yours.' October 11th on the early morning's mail the check for $5,000 was there and I deposited the check and that is the last I heard of the pears so far as he was concerned, except when I called him and asked for shipping instructions, but I am a little ahead of the story"; that after that, he repeatedly asked for shipping instructions, and was told that they would be given, but that they never were; that he had never requested or received a loan from the brokerage company, and was never notified that the brokerage company was not going to take the pears until the following March, and that he never gave a note or other evidence of indebtedness to the brokerage company, and that it never called upon him for the payment of any money after the "sale" of this fifteen hundred cases. There was also testimony that the brokerage company, through Colbert as its general manager, had on at least two other occasions bought canned goods outright.

This evidence was, if true, as the prayer concedes it to be, in our opinion legally sufficient to support the inference that the brokerage company purchased the fifteen hundred cases of pears from Lockerman, and that the $5,000 check was given on account of the purchase, and that the minds of the parties met on that very proposition. The mere fact that the brokerage company was engaged in the brokerage business did not prevent it from buying or selling merchandise on its own account as well as on the account of others. In doing that it violated no rule of public policy but was engaged in an entirely lawful and legitimate business. We know of no reason why Lockerman's testimony that he sold his pears to

it should not be given the same effect any other competent testimony would have.

Nor can it be said that the contract was too vague and indefinite to be enforced. Lockerman offered the pears for a price which the brokerage company accepted, it paid $5,000 on account of the purchase, and Lockerman was told to hold the pears for shipping instructions, which it would give. Just what else was needed to make a definite contract has not been suggested by the appellant, and has not occurred to us. We do not think either that the evidence proves as a matter of law that the pears were sold to Colbert as an individual. He did say "the pears are mine," and Lockerman said the pears are "yours." But Colbert was acting for the brokerage company as its general manager, and it paid the $5,000 on account of the purchase price. It is more reasonable to assume therefore that it made that payment on its own account, than to assume that it was spending its stockholders' money in buying pears for Colbert, and it may well be inferred that the purchase was by the brokerage company. Finally it is said that this prayer ought to have been granted because Colbert had no authority to buy the goods for the company, and that Lockerman as a director knew that. It would be a sufficient answer to that contention to say that, after the purchase was made, the company ratified it by paying part of the purchase price. But aside from that the very by-law upon which the appellant relies shows that the company was authorized to buy canned goods for its own profit when "deemed necessary by the executive committee to avoid loss." For these reasons we find no error in the refusal of this prayer.

By the plaintiff's second prayer the jury were instructed in effect that the burden was on the plaintiff to show that the transaction relating to the pears was not a sale. There appears to be no objection to that prayer which can be considered by this Court. The legal proposition stated in it is sound, and while it does assume a fact, no objection was made to it on that ground in the lower court and hence none

can be considered here. The plaintiff to recover was bound
to show that Lockerman was indebted to the brokerage com-
pany. It showed that the brokerage company paid Locker-
man $5,000, but in order to show an indebtedness to the
company for that payment it was bound to show that it was
a loan. Lockerman was not bound to prove that he did not
owe the company, but the appellant to sustain its action was
bound to prove that he did, and it cannot be said to have fully
discharged that burden by merely showing the delivery of
the check, because that fact alone did not prove that it was
delivered on account of a loan, any more than it proved that
it was in part payment or in full payment of a purchase.
While the prayer was, in view of the court's action in grant-
ing the defendant's third prayer, perhaps unnecessary, we
cannot for that reason alone say that it was improperly grant-
ed. The other prayers of the defendant appear to have been
in substantial conformity with the opinion of this Court in
*Lockerman v. Eastern Shore Trust Company, supra,* and
were in our opinion properly granted.

The first and second exceptions relate to the action of the
court in permitting the appellee to ask the witness W. M.
Wright, president of the brokerage company, on cross-exam-
ination, whether it had not bought canned goods outright as
well as on commission. Since the witness had testified that
the company operated as a broker, that was proper cross-
examination, and we find no error in those rulings.

The third exception was to the refusal of the court to allow
appellant to ask the same witness on re-direct examination
whether the directors of the company authorized purchases
of canned goods on its own account. While it is not appar-
ent why that question was not allowed, we do not see how
its exclusion could have injured the appellant, since even if
the directors had not by any formal action authorized the
purchases, nevertheless, unless prohibited by its constitution
or by-laws, or beyond the power conferred by its charter,
their failure to expressly authorize a purchase made under
the circumstances of this case by its general manager, and

ratified by its president and treasurer, would not invalidate it.

Charles A. Lockerman in answer to a question testified that he had "sold" 1500 cases of pears to the brokerage company. The appellant moved to strike out that answer because it was a conclusion both of law and of fact. The overruling of that motion is the basis of the fourth exception. We find no error in this ruling. The statement of the witness involved no conclusion of law; it was a statement of fact. It told what he did. It is true that the appellant's witness denied that Lockerman had "sold" the pears to the company, but that denial did not preclude him from saying that he had, nor convert his statement into a conclusion of law. To sell means ordinarily to transfer to another for a valuable consideration the title or the right to possess property. Certainly few words are more commonly used in commercial transactions than "buy" and "sell," and it has not been supposed that they amounted to any more than a simple description of one of the commonest incidents of every day life, and if Lockerman, as he says he did, transferred the title to his pears to the brokerage company, for a stated price, and received a part of that price, the transaction was a sale, and there is no apparent reason why he should not have so described it.

Henry B. Messenger, a witness for the defendant, was permitted over objection to testify that the brokerage company had "bought" some goods from him, and that ruling is the subject of the fifth exception. The relevancy of the testimony is not apparent, because the fact that the brokerage company had bought goods from Messenger did not prove that it had bought goods from Lockerman, and there is nothing to show that Lockerman knew of or was influenced by the transaction. But in view of the fact that the plaintiff's witness Wright, the president of the brokerage company, had testified on his cross-examination to the sale by Messenger, that testimony was merely cumulative and we would not, in our opinion, be justified in reversing the case because of that

error. It did relate to a collateral issue, but considering the full, clear, and explicit instructions granted by the court, we cannot believe that the jury were affected by it.

The defendant offered to prove the minutes of certain meetings of the stockholders of the brokerage company, apparently to show that the by-laws of the company forbade the purchase of canned goods or other products for its own account. The offer was refused and those rulings are the subject of the sixth and seventh exceptions. In our opinion the minutes offered do not show the existence of any such a by-law and we find no error in those rulings. The only by-law referred to in those minutes shows that purchases on its own account by the brokerage company were expressly authorized when deemed necessary by the executive committee to avoid loss, and there is nothing in the record in this case to show that the transaction in question was not such an instance. What has been said in reference to the last two exceptions also applies to the eighth, which was taken to the refusal of the court to permit parol evidence to be given of what took place at the stockholders' meeting referred to in them.

The ninth and tenth exceptions relate to the refusal of the court to permit the plaintiff to offer evidence in rebuttal concerning matters which it had or should have covered in its case in chief, and an examination of the record discloses no abuse of the discretion reposed in the trial court in dealing with the rebuttal evidence referred to in them.

Finding no reversible errors in the exceptions found in the record, the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*