835 A.2d 646

PARK STATION LIMITED PARTNERSHIP, LLLP

v.

James F. BOSSE, et ux.

No. 137, Sept. Term, 2002.

Court of Appeals of Maryland.

Nov. 13, 2003.

G. Vann Canada, Jr. (Miles & Stockbridge, P.C., on brief), Rockville, for appellant/cross-appellee.

Timothy E. Meredith (Robert W. Warfield of Warfield Meredith & Darrah, P.C., on brief), Severna Park, for appellees/cross-appellants.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

ELDRIDGE, Judge.

This declaratory judgment action presents two questions concerning a right of first refusal in a contract which, *inter alia*, granted reciprocal easements in two adjoining tracts of land. The first issue is whether a gift of property to a charitable foundation constitutes a "sale" within the meaning of the right of first refusal because the donors will receive a tax benefit from the gift. The second issue is whether the right of first refusal provision in the contract violated the Rule Against Perpetuities. The Circuit Court for Anne Arundel County (North, J.) declared that the gift was not a "sale" within the purview of the right of first refusal and that the right of first refusal provision did not violate the Rule Against Perpetuities. We agree with the Circuit Court and shall affirm.

## I.

James and Lois Bosse own, in fee simple, a 2.53 acre rectangular parcel of land in the Severna Park area of Anne

Arundel County. The Bosses' parcel is contiguous to the Ritchie Highway and is improved by retail establishments.

Park Station Limited Partnership, LLLP, which is the successor to Crow–Park Station Limited Partnership,[1] owns, in fee simple, a 20.97 acre parcel of land which surrounds and abuts the Bosse tract on three sides. The Park Station tract is improved by a large shopping center.

In 1986, the Bosses and Park Station entered into a contract whereby each of the parties granted to the other non-exclusive "reciprocal easements" in the roads, driveways, parking lots, and pedestrian walkways of both tracts, agreed not to erect fences or other barriers along the common boundary lines that would hinder vehicular or pedestrian traffic, agreed upon numbers and locations of parking spaces, agreed upon conditions and "restrictions" for future construction of improvements, agreed upon common use of loading areas and placement of trash dumpsters, agreed to cooperate with regard to utilities, and agreed upon certain "use restrictions."

The right of first refusal provision was contained in the 12th paragraph of the 1986 contract and stated as follows:

"12. Right of First Refusal. If, at any time after the date of this Agreement, BOSSE shall desire to sell the BOSSE TRACT or any part thereof, then BOSSE shall give PARK STATION written notice of the desire to sell and the price and terms of sale. PARK STATION shall have thirty (30) days to either accept or reject the offer in writing. In the event PARK STATION fails to accept the offer within said thirty (30) day period, then BOSSE shall be free to sell the BOSSE TRACT or any part thereof to others at a price and upon terms not less favorable to BOSSE than those contained in the written notice to PARK STATION for a period of six (6) months. If such sale is not so consummated, the terms of this Paragraph 12, again, shall be applicable to BOSSE. In the event PARK STATION fails to accept

---

1. Hereafter, both Park Station Limited Partnership, LLLP, and Crow–Park Station Limited Partnership, will be referred to simply as "Park Station" without distinguishing between them.

the offer, PARK STATION agrees to execute and deliver to BOSSE, upon request, a certificate setting forth the fact that PARK STATION has not accepted the offer and that BOSSE is free to sell the property to others at the price and upon the terms set forth in the written offer."

In early 2001, the Bosses created a religious foundation, named the Jehovah–Jireh Foundation, Inc. According to the Bosses, the purpose of the Foundation was to provide monetary grants to small churches. The Bosses desired to transfer the Bosse tract to the Foundation, as a gift, in order to provide funding for the Foundation. By letter dated November 15, 2001, the Internal Revenue Service determined that the Foundation was a tax exempt entity and that "Donors may deduct contributions to" the Foundation.

In a July 2001 letter, the Bosses' attorney notified Park Station that the Bosses intended "to transfer the Bosse Tract without consideration and as a gift to Jehovah–Jireh Foundation, Inc." The letter went on to express the opinion that the right of first refusal in the 1986 contract "applies to a 'sale' and does not apply to a gift."

Park Station's attorney replied by letter that the "proposed transfer by Mr. & Mrs. Bosse to Jehovah–Jireh Foundation, Inc., constitutes a 'sale' . . . under Section 12 of the Agreement. . . . " The letter explained this position by stating that "it can be inferred that Mr. and Mrs. Bosse expect to receive a tax deduction by virtue of the transfer to the Foundation. Thus, Mr. and Mrs. Bosse would indeed be receiving consideration by virtue of the transfer." The letter from Park Station's attorney concluded by saying "that my client does indeed intend . . . to acquire the Bosse Tract for the same amount being paid by Jehovah–Jireh Foundation." The letter did not explain what "the same amount being paid by" the Foundation meant.

After further correspondence failed to produce an agreement, the Bosses filed in the Circuit Court for Anne Arundel County a complaint for a declaratory judgment declaring, *inter alia*, that the proposed gift of the tract to the Founda-

tion is not covered by paragraph 12 of the 1986 contract and that paragraph 12 "is void and unenforceable in that it violates the Rule Against Perpetuities." Park Station filed a counterclaim for a declaratory judgment stating, *inter alia,* that the proposed transfer of the Bosse tract to the Foundation "constitutes a 'sale' within the purview of the Right of First Refusal" and that "the provisions of the Right of First Refusal do not violate the Rule Against Perpetuities."

Thereafter, the Bosses filed a motion for summary judgment and Park Station filed a cross-motion for summary judgment. The motions were based on affidavits and other documents which showed that there were no disputes over material facts.

Following a hearing, the Circuit Court filed a written opinion and a separate written order declaring that the proposed

"gift of the Bosse Tract to the charitable foundation would not constitute a 'sale' within the purview of the right of first refusal contained in paragraph 12 of the Agreement, and that the purported right of first refusal would not apply to such a donative transfer of the Bosse Tract. . . ."

The Circuit Court also held that the right of first refusal did not violate the Rule Against Perpetuities, stating:

" 'A contract should be interpreted if feasible to avoid the conclusion that it violates the Rule Against Perpetuities . . . under the doctrine that a construction should be favored which gives effect to intention rather than one which defeats it.' *Stewart v. Tuli,* 82 Md.App. 726, 735–736, 573 A.2d 109 (1990). . . .

"The Rule is not violated by the terms of the Right of First Refusal in paragraph 12. The contract states that the term Bosse refers to James F. Bosse and Lois F. Bosse. Paragraph 12 states '[i]f, at any time after the date of this Agreement, Bosse shall desire to sell. . . .' Although the words '[i]f at any time' indicate at any time in the present or future, the words 'Bosse shall desire to sell' require Plaintiffs to desire to sell. It goes without saying, that Plaintiffs cannot desire to sell their property when they are dead.

▉▉▉▉▉▉▉▉▉▉▉▉▉▉ .

Therefore, they must formulate the desire to sell within their lifetimes.

"Legal title is vested in Plaintiffs unless they sell or die.[1] In *Ferrero [Construction Co. v. Dennis Rourke Corp.*, 311 Md. 560, 536 A.2d 1137 (1988)], the contract was between two corporations with perpetual existences. In this case, we have two lives in being. . . . The law requires the Court to interpret this contract, if feasible, to avoid the conclusion that the Rule has been violated.

\* \* \*

[1] "Although paragraphs 6 and 7 refer to 'respective successors or assigns,' paragraph 12 does not. Also, paragraph 6 refers only to rights to enforce the contract, not to a desire to sell. Paragraph 7 refers to amendments to the contract being acknowledged by the parties or their respective successors or assigns. Only Plaintiffs can formulate a desire to sell."

Park State appealed and the Bosses cross-appealed to the Court of Special Appeals. Prior to any proceedings in the Court of Special Appeals, this Court issued a writ of certiorari. *Park Station v. Bosse*, 374 Md. 81, 821 A.2d 369 (2003).

## II.

▉▉ Park Station reiterates its argument below that, with "the Bosses receiving valuable consideration in the form of [a] tax benefit," the proposed "conveyance to the Foundation . . . is a sale within the confines of the Right of First Refusal." (Appellant's brief at 9). Park Station insists that a transfer of property is a "sale," rather than a "gift," whenever a donor "will receive recompense from the conveyance of the property . . . in the form of tax benefits which are of obvious value." (Appellant's reply brief at 6). Park Station cites no authority, from Maryland or elsewhere, in support of this proposition.

This Court has both defined the word "sale" and pointed out that it is to be given its common meaning as used by ordinary persons in every day life. Thus, in *Eastern Shore Trust Co. v.*

*Lockerman,* 148 Md. 628, 636, 129 A. 915, 918 (1925), Judge Offutt for the Court stated:

> "To sell means ordinarily to transfer to another for a valuable consideration the title or the right to possess property. Certainly few words are more commonly used in commercial transactions than 'buy' and 'sell,' and it has not been supposed that they amounted to any more than a simple description of one of the commonest incidents of every day life, and if Lockerman, as he says he did, transferred the title to his pears to the brokerage company, for a stated price, and received a part of that price, the transaction was a sale, and there is no apparent reason why he should not have so described it."

A similar point was made by the Supreme Court of the United States in *Commissioner of Internal Revenue v. Brown,* 380 U.S. 563, 570–571, 85 S.Ct. 1162, 1166, 14 L.Ed.2d 75, 82 (1965):

> "A 'sale,' however, is a common event in the non-tax world; and since it is used in the Code without limiting definition and without legislative history indicating a contrary result, its common and ordinary meaning should at least be persuasive of its meaning as used in the Internal Revenue Code. 'Generally speaking, the language in the Revenue Act, just as in any statute, is to be given its ordinary meaning, and the words "sale" and "exchange" are not to be read any differently.'

> \* \* \*

> " 'A sale, in the ordinary sense of the word, is a transfer of property for a fixed price in money or its equivalent,' *Iowa v. McFarland,* 110 U.S. 471, 478[, 4 S.Ct. 210, 214, 28 L.Ed. 198]; it is a contract 'to pass rights of property for money,—which the buyer pays or promises to pay to the seller . . . ,' *Williamson v. Berry,* 8 How. 495, 544, 12 L.Ed. 1170. Compare the definition of 'sale' in § 1(2) of the Uniform Sales Act and in § 2–106(1) of the Uniform Commercial Code. The transaction which occurred in this case

was obviously a transfer of property for a fixed price payable in money."

This Court in *Straley v. Osborne*, 262 Md. 514, 526, 278 A.2d 64, 71 (1971), invoked the commonly understood meaning of a "sale" to hold that an individual owner's "transfer of the property without consideration to a corporation wholly-owned by him was not a 'sale' as contemplated by paragraph 9 of the lease." Paragraph 9 of the lease gave the lessee of the property a right of first refusal "should the Lessor, . . . his heirs, assigns or personal representatives decide to sell the property." 262 Md. at 516, 278 A.2d at 65. In holding that the transfer to the corporation was not a "sale," the Court, 262 Md. at 526, 278 A.2d at 71, specifically relied on *Eastern Shore Trust Co. v. Lockerman, supra,* 148 Md. at 636, 129 A. at 918. *See also Kroehnke v. Zimmerman,* 171 Colo. 365, 467 P.2d 265 (1970).

Certainly the proposed transfer of the Bosse tract to the Foundation, with no consideration being paid by or on behalf of the Foundation, would be viewed as a gift, and not a sale, by ordinary persons applying the common meaning of the term "sale." The proposed transfer is very similar to the transfer involved in *Straley v. Osborne, supra.*

 Furthermore, for the transfer of property to be regarded as a "sale," ordinarily the consideration must be "intended by the parties to serve" as consideration for the transfer. A collateral benefit to the transferor having an entirely different "purpose" is generally not sufficient to make the transfer a "sale." *Grinnell Corporation v. United States,* 182 Ct.Cl. 702, 390 F.2d 932, 945–947 (1968). *See also, e.g., Butler v. Thomson,* 92 U.S. 412, 414, 23 L.Ed. 684, 685 (1875) ("Blackstone's definition of sale is 'a transmutation of property from one . . . to another in consideration of some price' "); *Cheney v. Eastern Transportation Line,* 59 Md. 557, 565 (1883) ("To effect a sale it is only necessary that the parties fully agree, with respect to a thing capable of identification, that for an agreed price the title to the thing shall pass from vendor to vendee"); *K.C.S., Ltd. v. East Main Street Land*

*Development Corp.,* 40 Md.App. 196, 199, 388 A.2d 181, 183, *cert. denied,* 283 Md. 734 (1978) ("The word *sell* ordinarily means to transfer title or possession of property to another in exchange for a valuable consideration"); Maryland Code (1975, 2002 Repl.Vol.), § 2–106(1) of the Commercial Law Article (the Uniform Commercial Code) ("A 'sale' consists in the passing of title from the seller to the buyer for a price"); *Black's Law Dictionary* at 1337 (Sixth Edition 1991) (defining a "sale" as a "contract between two parties, called, respectively, the 'seller' (or vendor) and the 'buyer' (or purchaser), by which the former, in consideration of the payment or promise of payment of a certain price ... transfers to the latter the title and possession of property. * * * A transfer of property for a fixed price in money or its equivalent").

▮▮▮ A gift, however, does not involve consideration by or on behalf of the donee. Rather, "[t]he requirements for a valid *inter vivos* gift are an intention on the part of the donor to transfer the property, a delivery by the donor and an acceptance by the donee. Moreover, the delivery must transfer the donor's dominion over the property." *Rogers v. Rogers,* 271 Md. 603, 607, 319 A.2d 119, 121 (1974).

A " 'sale' differs from [a] 'gift' in that the latter transaction involves no return or recompense for the thing transferred." *Black's Law Dictionary, supra,* at 1337. *See Rosenberg v. State,* 12 Md.App. 20, 25–26, and n. 4, 276 A.2d 708, 711, and n. 4 (1971) (A sale "encompasses the receipt of something in return for the [property] ... as distinguished from a gift. * * * [A] gift [is] 'something that is bestowed voluntarily and without compensation' ").

The proposed transfer from the Bosses to the Foundation involves no consideration from or on behalf of the Foundation. Under the general principles set forth above, it is clearly a gift and not a sale. This Court once pointed out that "[w]here all the elements of ... a sale exist, it cannot be made anything else by calling it a different name." *Albert v. Lindau,* 46 Md. 334, 347 (1877). Likewise, where all of the elements of a gift

are present, it cannot become a "sale" by Park Station calling it a sale.

Finally, to the extent that the issue has arisen in other states, the courts have consistently held that a transfer of property by gift does not trigger a right of first refusal based upon a "sale" or decision to "sell." Thus, in *Mericle v. Wolf and Sacred Heart Hospital*, 386 Pa.Super. 82, 562 A.2d 364 (1989), the lessee of a parcel of real estate had a right of first refusal to purchase the property if it "was to be sold." The owners gave the property to a charitable institution, the Sacred Heart Hospital. The lessee filed suit to set aside the transfer, arguing that the owners "deliberately attempted to defeat his right of first refusal." 386 Pa.Super. at 85, 562 A.2d at 366. The Pennsylvania intermediate appellate court affirmed a judgment in favor of the owners, holding that all of the elements for a valid *inter vivos* gift were present and that the transfer was not a "sale" because a "sale contemplates a vendor and a buyer and the transfer involves payment or a promise to pay a certain price in money or its equivalent." 386 Pa.Super. at 88, 562 A.2d at 367. The appellate court concluded that the term "sold" should "be given its ordinary meaning, and, therefore, the appellees' transfer by way of a gift did not activate the refusal right." 386 Pa.Super. at 89, 562 A.2d at 368.

In *Bennett v. Dove*, 166 W.Va. 772, 277 S.E.2d 617 (1981), Bennett as grantor conveyed real property to Dove as grantee, with the deed containing a right of first refusal in favor of Bennett if the grantee desired to "sell" the property. Later the grantee gave the property to his children, with the gift being accompanied by certain state tax advantages under West Virginia law. The original grantor, Bennett, brought an action to void the transfer from Dove to his children, contending that it violated her right of first refusal. While the trial court voided the transfer, the West Virginia Supreme Court of Appeals reversed, stating (166 W.Va. at 774–775, 277 S.E.2d at 619):

"The parties used the words 'desires to sell' to express their intent. 'Sell' is commonly and ordinarily understood

to mean an act of giving up property for money that the buyer either pays or promises to pay in the future, Webster's Third New International Dictionary (P.B. Gove Ed., 1976), and we must conclude that Robert Dove did not sell the property when he *gave* it to two of his children.

\* \* \*

"Accordingly, we conclude that the conveyance, a gift, did not violate Mabel Bennett's preemptive right. Her right did not ripen because Robert Dove never attempted or desired to sell his property."

The Supreme Court of Idaho reached the same conclusion in *Isaacson v. First Security Bank of Utah*, 95 Idaho 452, 511 P.2d 269 (1973). That case involved a lease of a farm which gave the lessee a right of first refusal in the event that the lessor "desires to sell the property." 95 Idaho at 453, 511 P.2d at 270. Thereafter, the owner gave the property to his son, and the lessee brought an action for specific performance of the right of first refusal. Both the trial court and the Supreme Court of Idaho held that the lessee was not entitled to specific performance because "the transfer to [the son] was not a 'sale' within the meaning of the first refusal provision of the lease...." 95 Idaho at 455, 511 P.2d at 272. *See also, e.g., Lakeside Park Association v. Keithly*, 43 Cal.App.2d 418, 423, 110 P.2d 1055, 1058 (1941) (Right of first refusal provision "clearly contemplates an absolute sale of the property, or some portion thereof, as distinguished from a gift or donation of a large proportion of the value of the land, upon condition that the grantee would maintain it perpetually as a public park"); *Fisher v. Fisher*, 23 Mass.App. 205, 206, 500 N.E.2d 821, 822 (1986) (Conveyance of property to the grantor's son was not a "sale" within the meaning of the right of first refusal); *Heidlebaugh v. Korn*, 159 Mont. 400, 402–403, 498 P.2d 1195, 1197 (1972) (Testamentary disposition "is not a sale as contemplated" by the right of first refusal); Annotation, *Landlord and Tenant: What Amounts To "Sale" of Property for Purposes of Provision Giving Tenant Right of First Refusal if Landlord Desires to Sell*, 70 A.L.R.3d 203 (1976).

Judge North of the Circuit Court for Anne Arundel County correctly declared that the gift of the Bosse tract to the Foundation did not trigger the right of first refusal contained in the 1986 contract.

### III.

The Bosses' cross-appeal challenges the Circuit Court's decision that the right of first refusal provision does not violate the Rule Against Perpetuities.

"As rights of first refusal are interests in property, the great majority of American jurisdictions have applied the Rule Against Perpetuities to such rights. * * * We choose to follow the majority of courts that apply the Rule Against Perpetuities to rights of first refusal." *Ferrero Construction Co. v. Dennis Rourke Corp.*, 311 Md. 560, 565, 575, 536 A.2d 1137, 1139, 1144 (1988). This Court explained the application of the Rule in *Dorado v. Broadneck*, 317 Md. 148, 152, 562 A.2d 757, 759 (1989), as follows (footnote omitted):

"Except for a few statutory modifications, Maryland retains the common law Rule Against Perpetuities. *Ferrero Constr. v. Dennis Rourke Corp.*, 311 Md. 560, 564, 536 A.2d 1137, 1139 (1988). While generally the Rule does not apply to contracts, nevertheless if a contract creates an equitable right in real property, enforceable by specific performance, the contract is subject to the Rule. Gray, *The Rule Against Perpetuities*, § 329 (4th ed.1942); Thompson, Real Property, § 2020 (1979). Thus, this Court has previously held that the Rule applies to an option contract to purchase land, *Commonwealth Realty v. Bowers*, 261 Md. 285, 274 A.2d 353 (1971), and to a right of first refusal to purchase an interest in property, *Ferrero Constr. v. Dennis Rourke Corp.*, supra.

"As a formulation of the Rule Against Perpetuities, our cases have adopted Professor Gray's statement that '[n]o interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest.' *Fitzpatrick v. Mer.-Safe, Etc. Co.*, 220 Md. 534, 541, 155 A.2d 702, 705 (1959), *quoting* Gray, *supra*,

§ 201. The Court pointed out in *Fitzpatrick,* 220 Md. at 541, 155 A.2d at 705, that the Rule does not invalidate 'interests which last too long, but interests which vest too remotely; in other words the Rule is not concerned with the duration of estates, but the time of their vesting.' "

*See also Ayres v. Townsend,* 324 Md. 666, 674–675, 598 A.2d 470, 474 (1991); *Continental Cablevision of New England, Inc. v. United Broadcasting Company,* 873 F.2d 717, 722–730 and n. 11 (4th Cir.1989) (Judge Murnaghan for the United States Court of Appeals, in a case governed by Massachusetts law, where Massachusetts courts had not addressed the issue of whether rights of first refusal were subject to the Rule Against Perpetuities, took the position that "the majority view, expounded ... by the Maryland Court of Appeals in *Ferrero,* ... [is] persuasive and in accordance with other Massachusetts pronouncements on the Rule"); Mitchell, *Can A Right of First Refusal Be Assigned?* 68 U. Chi. L.Rev. 985, 994 (2001) ("In traditional common law jurisdictions, a right of first refusal of indefinite duration violates the common law Rule Against Perpetuities").

The Circuit Court in the case at bar held that the right of first refusal in paragraph 12 of the 1986 contract would either vest or be extinguished when the "Bosse[s]" could no longer "desire to sell" the property. Accordingly, at the latest, the right could not continue after the deaths of the Bosses. It would vest, if at all, during a life in being, *i.e.,* the last of the two Bosses to die, and thus would not violate the Rule Against Perpetuities. Of course, under the Circuit Court's holding, if the proposed gift to the Foundation takes place, and if the property is never returned to the Bosses, the right will be extinguished, as the Bosses will no longer have the ability to sell the property. In reaching its conclusions, the Circuit Court held that the critical words of paragraph 12, *i.e.,* "[i]f ... Bosse shall desire to sell the Bosse.Tract," do not encompass a desire to sell by the Bosses' successors or assigns.

The challenge to the Circuit Court's decision regarding the Rule Against Perpetuities is based on the court's conclusion that the above-quoted words of paragraph 12 do not include

the Bosses' successors or assigns. The Bosses rely on the provisions of paragraph 10 of the 1986 contract which state:

"10. Nature of Rights Granted. The easements, restrictions, benefits and obligations set forth in this Agreement shall create mutual and reciprocal easements, restrictions, benefits and servitudes upon the PARK STATION TRACT and the BOSSE TRACT, running with the land, which shall be perpetual, and shall, except as herein set forth, inure to the benefit of, and be binding upon, the parties hereto and their respective successors in ownership of the PARK STATION TRACT and the BOSSE TRACT."

The Bosses insist that, because of paragraph 10, the right of first refusal will be perpetual, binding all successors of the Bosses, and remaining a right for all successors of Park Station. In the Bosses' view, the right of first refusal may never vest or be extinguished, and therefore it violates the Rule Against Perpetuities.

The provisions of the 1986 contract granting reciprocal easements, containing a multitude of specific agreed-upon "restrictions," and containing agreements concerning each party's continuing use of the tracts, are set forth in paragraphs 1 through 5, 8–9, and 11 of the contract. None of these paragraphs has its own reference to "successors or assigns." These appear to be the paragraphs to which paragraph 10, referring to "easements, restrictions, benefits and obligations," and binding "successors or assigns," seems to apply. They are all provisions concerning the day-to-day use and governance of both tracts.

Paragraphs 6 and 7, however, relating to an injunction to restrain a violation of the contract and amendment of the contract, are in a different category. They do not concern the daily use of the properties, and they each have their own clauses binding "successors or assigns." Similarly, paragraph 12 does not concern the daily use of the property, but grants an interest which can only vest one time in the future. As pointed out by the Circuit Court, the reference to "successors or assigns" in paragraphs 6 and 7, and the omission of this

language in paragraph 12, suggests that the word "Bosse" in paragraph 12 was intended to be personal and not intended to encompass successors or assigns.

■ This conclusion is reinforced by the principle, applied in numerous cases, that rights of first refusal are presumed to be personal and are not ordinarily construed as transferable or assignable unless the particular clause granting the right refers to successors or assigns or the instrument otherwise clearly shows that the right was intended to be transferable or assignable. *See, e.g., Roemhild v. Jones,* 239 F.2d 492, 495 (8th Cir.1957) (The owner "could only offer the land for sale during his lifetime. * * * There is no language in the reservation stating that the [right of first refusal] runs to the heirs or assignees"); *Vogel v. Melish,* 31 Ill.2d 620, 622, 624–625, 203 N.E.2d 411, 412–414 (1964) (Right of first refusal if owner "desired to sell" is "a restraint on the alienation of the" property "and consequently is to be strictly construed. * * * [I]t is unreasonable to assume that the parties intended it to survive the death of either of them . . . when no provision for that contingency is made in the agreement, other than the . . . general terms of paragraph 6 [which was the same as paragraph 10 of the agreement in the present case]"); *Barnhart v. McKinney,* 235 Kan. 511, 513, 519, 682 P.2d 112, 114, 119 (1984) (The contract contained a clause similar to paragraph 10 of the contract in the case at bar, and the court held that the right of first refusal could not "be passed on to the heirs and assigns of the Barnharts," that "it was personal to the Barnharts," and that, therefore, the "event [that] would trigger [the] preemptive right of purchase [would occur] well within a term not violative of the rule against perpetuities"); *Fisher v. Fisher, supra,* 23 Mass.App. at 206, 500 N.E.2d at 822 (The right of first refusal "was extinguished by William's death," as the clause granting the right did "not contain words such as heirs or assigns but speaks in personal terms"); *Kershner v. Hurlburt,* 277 S.W.2d 619, 623 (Mo.1955) ("The instant contract, reasonably construed, does not violate the rule against perpetuities because the rights [of first refusal] conferred by it are personal to the holders thereof and termi-

nated at their deaths"); *Nickels v. Cohn,* 764 S.W.2d 124, 132–133 (Mo.App.1989) (Same); *Bloomer v. Phillips,* 164 A.D.2d 52, 55, 562 N.Y.S.2d 840, 842 (1990); *Old National Bank of Washington v. Arneson,* 54 Wash.App. 717, 723, 776 P.2d 145, 148 (1989) ("preemptive rights are generally construed to be nontransferable"); *Sweeney v. Lilly,* 198 W.Va. 202, 205, 479 S.E.2d 863, 866 (1996); *In the Matter of Wauka, Inc.,* 39 B.R. 734, 737–738 (Bkrtcy.N.D.Ga.1984); Mitchell, *Can A Right of First Refusal Be Assigned?, supra,* 68 U. Chi. L.Rev. at 994; 3 *Corbin On Contracts,* § 11.15 at 587 (Rev. Ed.1996).

 In addition, as also stated by the Circuit Court, a contract or other instrument " 'should be interpreted if feasible to avoid the conclusion that it violates the Rule Against Perpetuities,' " *Stewart v. Tuli,* 82 Md.App. 726, 735–736, 573 A.2d 109, 113 (1990). *See, e.g., In re Estate of Snyder,* 195 Md. 81, 92, 72 A.2d 757, 761–762 (1950); *Safe Deposit & Trust Co. v. Sheehan,* 169 Md. 93, 103, 107, 179 A. 536, 541, 543 (1935); *Graham v. Whitridge,* 99 Md. 248, 276–277, 57 A. 609, 612 (1904); *In re Stickney's Will,* 85 Md. 79, 101–104, 36 A. 654, 655–656 (1897). This principle strongly militates in favor of a holding that the language "easements, restrictions, benefits and obligations" in paragraph 10 was not intended to apply to the right of first refusal in paragraph 12.

For the above stated reasons, paragraph 12 of the 1986 contract does not violate the Rule Against Perpetuities.

*JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED. EACH SIDE TO PAY ITS OWN COSTS.*